## In re GANNON'S WILL.

(Common Pleas of New York City and County, General Term.    February 6, 1893.)

1. RECEPTION OF INCOMPETENT EVIDENCE—WAIVER OF OBJECTIONS.
    In a proceeding to prove a will, which was contested by the widow and all the next of kin of the deceased, testimony was given by the widow of transactions between herself and her husband; by a sister of the deceased, of conversations with him about his wife; by a physician, who had attended the deceased, whether he had a disease which he imagined he had; and by a clergyman, of conversations between himself and the deceased.    No objection was made when this testimony was offered, and no motion was made during the trial to strike it out.    *Held*, that the defeated party could not avail himself of such errors on appeal, as no injustice was done, where the testimony wrongfully admitted was mostly cumulative, and the facts testified to were established by competent testimony of other and disinterested witnesses.

2. SAME.
    A party to an action will not be allowed to speculate on the result by allowing the admission of incompetent testimony in the hope of an advantage to himself, and afterwards claim that there was such error in the admission of testimony as to entitle him to a new trial.

3. CONTEST OF WILL—EVIDENCE.
    Where an alleged will was executed in 1887, it was not error to exclude articles of separation made between the deceased and his wife in 1890, as it could not show any motive for the peculiar provisions of the alleged will.

4. SAME—MENTAL CAPACITY.
    It was not error to set aside the will, though the jury found that the deceased had testamentary capacity at the time of its execution, when they also found that he had a delusion as to the fidelity of his wife, and because of that delusion he made an alleged will by which he deprived her of any portion of his property.

Appeal from special term.

Proceeding for the probate of the will of John Gannon, deceased.    The surrogate sent the issues to the court of common pleas to be tried by the court and a jury, where there was a verdict for the contestants.    From an order denying a motion for a new trial, proponents appeal.    Affirmed.

Argued before DALY, C. J., and BOOKSTAVER and BISCHOFF, JJ.

Daniel J. Cushing, (Abram Kling, of counsel,) for appellants.

James P. Campbell, for respondent Sarah Gannon.

William F. Clare, for respondent Bridget McGrath.

Jesse Grant Roe, (Charles H. Beckett, of counsel,) for respondent Katherine Brophy.

BOOKSTAVER, J.    The alleged will of John Gannon was executed on November 19, 1887, and was contested by all his next of kin, namely,

his widow, Sarah Gannon, and his sisters, Bridget McGrath and Kath-erine Brophy. By section 2547 of the Code, the surrogate may direct any special proceeding for the probate of a will to be determined in the court of common pleas, and he so directed in this case. The issues so sent to this court were tried by the court and a jury, and resulted in a verdict in favor of the contestants. This verdict can be reviewed only by a motion for a new trial upon the minutes, and must be considered the same as in a case tried by a jury under section 999 of the Code, when a motion is made for a new trial upon the minutes, and in such case any errors that may have occurred upon the trial may be reviewed by the general term. The appellants contend that there were manifest er-rors in the admission of testimony. The widow was allowed to testify as to transactions between herself and her husband. Bridget McGrath, a sister of the deceased, interested in the estate as a contestant, was al-lowed to testify as to what the deceased had told her in regard to his wife. George McGauran, the physician who had at times attended Gan-non as such, was also allowed to testify as to whether Gannon had the disease which he imagined ·he had. The Reverend Matthew A. Taylor was allowed to testify as to conversations between himself and the de-ceased. But no objection was taken to this testimony when offered, nor was any motion made at any time during the progress of the trial to have it stricken out; and although it is true that the court, at general term, has the power to reverse for errors, even where no exception has been taken, (Wehle v. Haviland, 42 How. Pr. 399; Kelly v. Frazier, 27 Hun, 314; Smith v. Insurance Co., 49 N. Y. 211,) yet it will not do so unless it is clear that injustice has been done, and justice would be promoted by a new trial, which does not appear in this case. The testimony ad-mitted was for the most part merely cumulative, and the facts testified to by the witnesses whose testimony is now objected to were established beyond any question, in our judgment, by perfectly competent testi-mony of other and disinterested witnesses, by the deceased's own letter, and the testimony of proponents' witness, who was also a physician and had examined the deceased as such. In this last respect the appellants did precisely the same thing which they now complain of the contestants' doing; that is, offering the testimony of a physician, who had attended the deceased, as to his mental and physical condition. And it is now the well-settled law of this state that when such testimony is admitted by the parties to the proceeding, without objection, the result will not be disturbed; in other words, that the objection to such testimony must be specifically taken, or the defeated party cannot avail himself of it upon appeal. Loder v. Whelpley, 111 N. Y. 239, 18 N. E. Rep. 874; Hoyt v. Hoyt, 112 N. Y. 493, 20 N. E. Rep. 402. And in this case, particularly, we should not reverse on this account, as it is manifest from the case that these witnesses were deliberately allowed to testify by the appellants, without objection, because they hoped to obtain from them certain admissions favorable to themselves. A party cannot be allowed to speculate upon the result of an action, by willingly admit-ting incompetent testimony in the hope of an advantage to himself, and afterwards, when he finds that the speculation has been unsuccessful,

claim that there was such error in the admissions as to entitle him to a new trial. To reverse in such cases would not be in the interest of justice, but would be putting a premium upon speculation.

Appellants also contend that the court erred in excluding the articles of separation executed between the deceased and his wife. The will was executed in 1887, and the separation agreement was not executed until 1890. This had nothing to do with, nor could it show in any way any motive for, the peculiar provisions of the alleged will, as it was executed three years after the will. If admitted, it would have simply tended to show that Gannon's delusion possessed his mind completely.

The appellants also claim that, the jury having found the decedent had testamentary capacity at the time of the execution of the will, it was error to set it aside on any ground. But it was clearly established on the trial that the decedent was possessed of the idea that his wife was unfaithful to him, and had communicated to him a venereal disease; and it was also clearly established that this was a delusion, and that neither the wife had had such a disease nor had he at any time suffered from it. And it is very certain that this delusion was the chief, if not the sole, cause for making a will by which he deprived his wife of any portion of his property; the provision for dower amounting to nothing, as he had no real estate. The court correctly charged the law in regard to such delusions. In order to invalidate a will it is not necessary that the intellect should be in total eclipse and oblivion, or that the testator should be generally insane. There is a partial insanity, and a total insanity. Such partial insanity may exist as respects particular persons, things, or subjects, while as to others the person may not be destitute of the use of reason. A person may have upon some subjects, and even generally, mind and memory, and sense to know and apprehend ordinary transactions, and yet upon the subject of those who would naturally be the objects of his care and bounty, and the reasonable and proper disposition to them of his estate, he may be of unsound mind. In this case we think it clear that he was a monomaniac in respect to his wife's fidelity, and as to the disease which he claimed she had communicated to him. Monomania is a perversion of the understanding in regard to a single object, or a small number of objects, with the predominance of mental excitement; while mania is a condition in which the perversion of the understanding embraces all kinds of objects, and is accompanied with general mental excitement. The verdict of the jury in this case preserves and emphasizes that distinction. By it the jury found that Gannon had general testamentary capacity, was not a monomaniac on all subjects, but had an insane delusion affecting the will in question, and was a maniac on that subject, and that such mania influenced the making of the will. This conforms to the rule in this state. Jarm. Wills, 112; Forman's Will, 54 Barb. 274; Parish Will Case, 25 N. Y. 1, and cases there cited.

The order should therefore be affirmed, with costs. All concur.