In the Matter of the Estate of MARY RICE, Deceased.

Surrogate's Court, New York County, April 26, 1940.

*Patrick J. Fogarty*, for the proponent.

*Glass & Lynch [William F. O'Connell* of counsel], for the contestant Katherine McFeeley.

*Rice & Maguire [George J. Poynton* of counsel], for Charles T. Rice, attorney in fact for Bernard Rice, legatee.

*Philip J. O'Brien,* for the contestant Elizabeth Rice.

*Harold J. Blackman,* special guardian.

FOLEY, S. The surrogate finds upon the evidence in the contested probate proceeding that the decedent, at the time of the execution of the will on September 9, 1930, was not possessed of testamentary capacity. The propounded paper is accordingly denied probate.

The principal issue raised by the contestants is the unsoundness of mind of the testatrix. She left, as her next of kin, her brother, two sisters and a niece. In her will she made a small bequest to charity and left the balance of her estate to her brother and to the members of his family. At the time of the execution of the will she was about sixty-one years of age.

The testimony of the two physicians who treated her in the State hospitals, in which she was a patient before and after the making of the will, was particularly convincing that she was continuously incompetent and suffering from a paranoid condition from the time of her adjudication and commitment in 1927 to the date of her death in 1939. Each of these physicians is a specialist in mental diseases with experience over a long period of years. Their testimony is impressive because it is unaffected by any motive or interest. One of them had treated her upon her entrance into Manhattan State Hospital in 1927. He testified that she was suffering from insane delusions at that time, which, because of the nature of her mental disease, persisted until her death. One of these delusions was that her sisters, whom she disinherited in her will, had been responsible for her original commitment. They were evidenced by subsequent declarations of animosity against the sisters by the decedent. Both physicians were of the opinion that in the condition of the decedent no lucid intervals could occur, and that the insane delusions were always existent. Both of them were of the opinion that she was suffering from a continuing incurable insanity during the entire period of the last twelve years of her life. It is urged that because the will was executed at a time when she had been paroled from one of the State hospitals an inference of testamentary capacity may be drawn from her acts and declarations at the time of its execution. The testimony presented by the contestants entirely nullifies such a conclusion. The decedent, Miss Rice, was committed to Central Islip State Hospital by an order of the Supreme Court dated June 15, 1927. She was subsequently transferred to Manhattan State Hospital. She was paroled from that institution, although then incompetent and insane, with delusional ideas still persistent. She was placed in the custody of her cousin.

The parole was made under the provisions of subdivision 3 of former section 85 of the Mental Hygiene Law (now section 87), whereby a superintendent of an institution is authorized to parole or discharge a patient " who is not recovered but whose discharge, * * * will not be detrimental to the public welfare, or injurious to the patient." Further provision is made for the assurance that the friends or relatives of the patient are willing and financially able to receive and properly care for the patient. Periodic visitations to a clinic in this city were required of Miss Rice during the term of her parole. The medical reports of these visits show the continuance of her paranoid condition and the persistency of her delusions concerning her sisters. The will, as stated, was executed on September 9, 1930. She was recommitted to a State institution because of her impaired mental condition, demonstrated by the same symptoms, on June 20, 1933. A few months later a committee of her person and property was appointed by an order of the Supreme Court. She remained a patient in two successive State hospitals until the time of her death.

" The holding of delusions does not in and of itself constitute testamentary incapacity. There may co-exist delusion and a disposing mind. A delusion affects testamentary capacity only when it enters into or controls in some degree its exercise." (COLLIN, J., *Matter of Heaton*, 224 N. Y. 22, 29, citing *Dobie* v. *Armstrong*, 160 id. 584.) In *Matter of Heaton* (*supra*) the Court of Appeals found that the delusion had not entered into the testamentary act. Here, because of the evidence, a contrary conclusion must be reached. The insane delusion of Miss Rice that her sisters had been responsible for her commitment to a State hospital entered directly into the will and resulted in their disinheritance. Almost the entire estate was given to her brother and his family in a foreign country, with whom she apparently had little or no contact. Her sisters had resided in New York for many years and there is no indication, other than her mental derangement, of any justified hostility on their part against her or on her part against them. We thus have a situation where the delusion " is insanity, where one persistently believes supposed facts, which have no real existence, except in his perverted imagination, and against all evidence and probability, and conducts himself, however logically, upon the assumption of their existence." (*Matter of White*, 121 N. Y. 406, 413.) The delusion in that case constitutes insanity, and the instrument is not the will of its maker. (*American Seamen's Friend Society* v. *Hopper*, 33 N. Y. 619; *Matter of Shaw*, 2 Redf. 107, 127; *Matter of Prentice*, 110 Misc. 456; *Matter of Gannon*, 2 id. 329; affd., 139 N. Y. 654.)

It is necessary to the exercise of a power of testamentary disposition that the person shall understand the nature of the act and its effects and shall understand the extent of the property of which he is disposing. He must be able to comprehend and appreciate the claims which he ought to recognize, although the ability to consider only is necessary. To make a valid will it is essential that no disorder of the mind shall poison his affections, pervert his sense of right or prevent the exercise of his natural faculties. To a greater extent it is necessary that no insane delusion shall influence his will in the disposition of his property or bring about a distribution which, if the mind had been sound, would not have been made.

In support of testamentary capacity the proponent has offered only the version of the attorney who prepared the instrument. His acquaintance with Miss Rice was slight and his opportunity for observing her mental condition was confined to the preparation and the execution of the will in the brief period of a day or two covering the transaction. The other subscribing witness who testified had been called in merely to attest the will. Because of the lapse of years and his brief part in its execution, he was unable to give any supporting evidence as to testamentary capacity. The evidence adduced by the proponent is entirely unsatisfactory in the face of the clear and convincing testimony of the physicians who treated Miss Rice and their strong opinions, based upon personal observation, as to her incurable insanity and her continued incompetency before, at, and after the time of the making of her will.

The general rule is that " when it once appears that a person, prior to the making of an alleged will, has been adjudged by a court having jurisdiction, to be insane or of unsound mind, a presumption prevails to the effect that the same mental condition continued until it is overcome by satisfactory evidence." (*Matter of Widmayer*, 74 App. Div. 336.) That presumption was not overcome here. No lucid interval was shown, nor was any recovery in the mental health of the decedent established as between the time of the original adjudication of incompetency in 1927 and the date of the making of the will in 1930. On the contrary, the credible evidence tends to show that the mental condition of the decedent deteriorated progressively.

It is urged by the proponent that the decedent acted rationally and appeared to be normal in her ordinary conduct. " In order to invalidate a will it is not necessary that the intellect should be in total eclipse and oblivion or that the testator should be generally insane. There is a partial insanity and a total insanity. Such partial insanity may exist as respects particular persons, things or

subjects, while as to others the person may not be destitute of the use of reason." (*Matter of Gannon, supra,* 2 Misc. 329, 332.) The testimony of the medical specialists here emphasized that these symptoms and habits of outward appearance of normality and profound abnormality, always existent, but only occasionally revealed, occur in the form of the mental derangement with which Miss Rice was afflicted.

The burden of showing that the testatrix was of sound mind was upon the proponent. That burden has not been sustained.

Tax costs and submit decree on notice denying probate to the instrument.