In the Matter of the Probate of the Will of JOSEPHINE LACHAT, Deceased.

Surrogate's Court, New York County, October 24, 1944.

*David J. Levy* for Clyde M. Limbaugh, proponent.

*Joseph A. Cox* for James F. Egan, Public Administrator of the County of New York, respondent.

*James L. Duncanson,* attorney designated by Alien Property Custodian for Leo Lachat and another, persons in enemy-occupied territory, respondents.

*Nathaniel L. Goldstein, Attorney-General of the State of New York (Corning G. McKennee of counsel).*

*John T. Magan* for Home for the Aged of the Little Sisters of the Poor, respondent.

*George W. Martin, Elizabeth M. Graham* and *John B. Kreischer* for the Bank of New York and Memorial Hospital, respondents.

*Louis D. Della Morte* and *George N. Whittlesey* for Children's Aid Society of City of New York, respondent.

*Robert E. Connolley* and *John J. Kling* for St. Vincent de Paul Institute, respondent.

*Matthew B. Sentner* for New York Association for the Blind, respondent.

*Cyrus B. Austin* for Salvation Army, respondent.

*Joseph V. McKee* for Title Guarantee & Trust Co., respondent.

FOLEY, S.   This contested probate proceeding was tried by the Surrogate without a jury.   The will is alleged to have been executed on December 28, 1942.   Objections to its probate were filed by all of the six charitable legatees named in a prior instrument dated December 18, 1935.   Objections were also filed by certain next of kin and by the Public Administrator representing unknown possible next of kin.   The Alien Property Custodian and the Attorney-General also appeared to protect the rights of possible next of kin.   The objections raised issues involving the invalidity of the form of execution, lack of testamentary capacity, undue influence and fraud.

The Surrogate finds upon the evidence that the testatrix was not possessed of testamentary capacity at the time of the execution and that the will was procured by the undue influence of Clyde M. Limbaugh, the proponent and principal beneficiary. The will is denied probate.

The evidence in the case presented exceptional and extraordinary circumstances.   A stronger case of undue influence has never been presented during the long experience of the Surrogate.

At the time of execution the testatrix, Miss Lachat, was about ninety-three years of age.   Limbaugh was about forty years of age.   He was the manager of the Hotel Alexandria where the decedent had lived for a period of approximately two years before the date of execution.   In the latter part of 1941 the evidence conclusively shows that the mental condition of Miss Lachat was fundamentally changed.   In the succeeding year she had three attacks of pneumonia and was suffering from that disease at the time of execution.   Very shortly before the making of the will her hip was broken from a fall.

An array of disinterested and credible witnesses, including nurses, testified to a pathetic picture of the complete mental and physical collapse of the testatrix with all the evidence of second childhood.   She became careless in her dress and personal habits. Her mother had been dead for many years.   The decedent suffered from delusions, for a period of a year before the making of the will, that her mother was alive and she sought to keep engagements at what she called her mother's home.   She tore

her clothes and her bed linen into shreds. She was unable to recognize and identify her nurses who attended her and other persons who visited her.

Only a little more than three months after the making of the will a proceeding was initiated to have Miss Lachat adjudicated an incompetent. Her mental condition was the subject of a trial in the Supreme Court. The jury in its special verdict found that she was incompetent. The order of adjudication was made on June 3, 1943. Two specialists in mental and nervous diseases certified to her mental affliction. In the papers in that proceeding the physician who attended her for some months prior to the execution of the will gave his opinion that she was of unsound mind and incompetent to manage herself or her affairs in consequence of imbecility arising from old age and loss of memory. He was a subscribing witness to the contested instrument.

One of the specialists, Dr. Samuel Feigin, a psychiatrist of distinction and long experience in the observation and treatment of mental diseases, testified for the contestants at the trial of the probate contest. He examined the testatrix on April 18, 1943. He found her in a very disorganized mental and physical condition as a result of a marked senile dementia. He stated that she was totally confused and disoriented. His examination revealed marked senile arteriosclerotic changes. He stated that at the time of the examination her mental condition was chronic and incurable. His further opinion was that the condition which he found in April, 1943, had existed for a period of at least six months, which would have brought the existence of senile dementia to a date two months before the execution of the will. He also stated that in his opinion she could have had no lucid intervals in the entire period.

His opinion was amply sustained by the witnesses who testified to delusions and to acts and conversations prior to and at the time of the execution which they characterized impressed them as irrational. Miss Lachat died on December 25, 1943.

The proponent Limbaugh submitted no evidence tending to show the soundness of mind of the decedent at or about the time of the making of the will. The contestants on the other hand called the attorney who drafted it and who supervised its execution. There was also submitted as part of the record of the trial the testimony of the two subscribing witnesses who were deemed to be so-called Surrogate's witnesses. Their testimony was wholly insufficient to overcome the overwhelming weight of the evidence which leads to the inescapable conclusion

that Miss Lachat entirely lacked testamentary capacity at the time she signed the contested paper and suffered at that time from a total loss of memory, judgment and volition.

Again the testimony clearly reveals that the will was procured and executed under the domination, coercion and undue influence of Limbaugh. Some months before the actual signing of the paper, he boasted of his knowledge of the financial possessions of Miss Lachat and of his determination to obtain a will in his favor. He stated that she owned property of the value of $100,000 and told a nurse in attendance on the testatrix, a disinterested witness who testified convincingly, that he owned Miss Lachat "all free and clear".

For many years Miss Lachat had been represented by Herman C. Storck as her attorney. He was the draftsman of a prior will of 1935 and a former will executed in 1925. After his death in 1941, his office associate, John B. Kreischer, became her legal adviser. It was Limbaugh who first called to the attention of Mr. Kreischer the serious mental deterioration of Miss Lachat as early as August 12, 1942, approximately four and one-half months before the date of the execution of the contested paper. Discussions then ensued between Limbaugh, Juliette Lachat, a distant cousin of the testatrix, and Mr. Kreischer, the attorney, in a plan to have the testatrix adjudicated an incompetent. During this period Miss Lachat at times wandered around the hotel in a dazed condition and on one occasion left the hotel and was found in a hospital suffering from injuries apparently received as the result of a fall. In the latter part of September, 1942, a petition for an adjudication of incompetency was prepared by the attorney, Mr. Kreischer, after consultation with Limbaugh and Juliette Lachat. On October 1st, it was actually signed and verified by Juliette Lachat as one of the nearest relations. The petition contained allegations of the imbecility of the testatrix, that she was of unsound mind and incompetent, because of her old age, loss of memory and understanding and that she was suffering from a serious mental illness due to her senility. The filing of the petition was deferred and a new petition was drawn in the following April of 1943 which resulted in the adjudication of insanity to which reference has been hereinbefore made.

Limbaugh's participation in these discussions and acts admits of the plain inference that he knew the seriously weakened condition of mind prior to the time that the will procured by him was executed. It is also illuminative of his design to obtain the bulk of Miss Lachat's property.

Again it is of significance that instead of Miss Lachat's will being prepared and executed under the supervision of her regular attorney, Mr. Kreischer, a new attorney was brought in for its hurried preparation. He was selected by Limbaugh. He had been admitted to practice only about four years. He testified at the trial as a witness called by the contestants. He first met the testatrix on the day that he claimed the instructions were given to him by the testatrix. It was the day before the execution of the paper. He testified that he typed it at his home that day and arranged to have it executed the following morning. This haste is significant of the scheme to obtain a will in favor of the proponent. Two of the subscribing witnesses were friends of Limbaugh. One of them was his physician. The third witness, a nurse, was not produced by the proponent for examination either before the trial or at the trial. Limbaugh paid the attorney his fee for drawing the will. It is an undisputed fact that Limbaugh did not consult Mr. Kreischer concerning the preparation or execution of any new will. In the face of the information and belief of Mr. Kreischer that Miss Lachat was incompetent, and because of the extreme improbability of his willingness to participate in the making of a will by her, the selection of a new attorney by Limbaugh to prepare and supervise the execution of the will adds emphasis to his scheme to contrive a will in his favor.

The dispositions in the contested paper stand out in sharp contrast with the prior will of 1935 in which all of the estate was given by Miss Lachat to six designated charities. Her relatives were distant, either first cousins or first cousins once removed.

The estate of Miss Lachat amounts to about $80,000. The only bequest in it to a person other than Limbaugh is a gift of a pair of brass candle sticks and a painting which were given to a cousin, Juliette Lachat. These articles are of nominal value. If the will had been admitted to probate Limbaugh would therefore have taken practically the entire estate, consisting of cash, securities and other personal property. A change of intent from a formal instrument, with a carefully thought-out plan of distribution to a subsequent plan which benefits a person charged with undue influence is always an important element for consideration in a contest.

The alleged reasons for the change are of special significance here. Limbaugh is described in the will as " my kind and loyal friend ", and it further states " Clyde Limbaugh has been handling all my affairs and has helped me in many ways ". Actually that statement was not correct for her financial and

legal affairs had been handled by her two attorneys, Mr. Storck, until his death, and after that event by Mr. Kreischer.

Aside from the quoted language of the will, which was more probably selected by Limbaugh himself, there is no satisfactory evidence in the record to show that Miss Lachat had ever expressed any real affection for him. On the contrary, over a period of months she expressed her hostility to him and frequently complained that he had held her a prisoner in her room in the hotel of which he was the manager.

On the morning of the very day of the execution of the instrument and some hours before it was supposed to have been signed, Limbaugh attempted to obtain its execution by a different group of subscribing witnesses. Two of them testified convincingly that the pen was placed in the hand of Miss Lachat, that because of her weakness she was unable to even make a mark upon the paper, that she collapsed and became unconscious. The plan of execution was then abandoned for the time. These facts, however, strongly establish that the same physical and mental weakness prevailed a few hours later when it is claimed by the proponent and the subscribing witnesses that Miss Lachat executed the will.

With the overwhelming array of evidence showing the utter absence of any mental strength or volition, the exercise of coercion and force by the person charged with undue influence, the selection of the attorney who drafted it, and the selection of the subscribing witnesses by Limbaugh and other circumstances surrounding the testamentary act, the conclusion that it was obtained by undue influence must inevitably result. (*Matter of Anna*, 248 N. Y. 421; *Matter of Wood*, 253 App. Div. 78; *Matter of the Will of Smith*, 95 N. Y. 516; *Tyler* v. *Gardiner*, 35 N. Y. 559; *Matter of Forsyth*, 169 Misc. 1042; *Matter of Lasher*, 165 Misc 592.)

The Surrogate holds that the will was offered in bad faith. In the exercise of my discretion, costs and expenses of the contest are denied to the proponent. (*Matter of Reeves*, 266 App. Div. 799, 968, affd. 292 N. Y. 711; *Matter of Marshall*, 189 App. Div. 477; *Matter of Jackson*, 127 Misc. 187.)

Ordinarily, a person named as executor has the " * * * duty to bring forward the will and to assume the burden of its probate. But where it is shown, as it was in this case, that the executor was a party to the fraudulent execution of the will and with full knowledge of the fraud he attempted to impose a false and fraudulent will upon the court, it is contrary to good morals and public policy that the estate should be mulcted in the costs and expenses of his unsuccessful effort to perpetuate the fraud." (*Matter of Marshall, supra,* p. 481.)

It is of important significance, that the proponent, although he would have obtained the sum of $75,000 as residuary legatee if the will had been admitted to probate, conceded the weakness of his case by attempting to make a settlement with one of the charitable legatees named in the prior will for the sum of $8,500 or approximately one eighth of his potential share. Mention of such settlement would not have been made except that counsel for Limbaugh has submitted the agreement in evidence and rested upon his right to enforce it.

In the exercise of the discretion of the Surrogate, likewise, the costs of the contestants are directed to be charged personally against the proponent. (Surrogate's Ct. Act, § 276; *Matter of Rogers*, 127 Misc. 428, affd. 220 App. Div. 834; *Matter of Buckley*, N. Y. L. J., Feb. 14, 1940, p. 701, col. 5, affd. 260 App. Div. 863; *Matter of Garvin*, 256 N. Y. 518; *Matter of Hidden*, 243 N. Y. 499; *Stevens* v. *Central Nat. Bank*, 168 N Y. 560.)

By a prior intermediate decision herein (184 Misc. 486) the Surrogate refused to grant a denial of probate and declined to give recognition to a tentative settlement agreement made between the proponent and the charitable residuary legatee under the prior will and certain other parties. I therein pointed out that the Tilden Act (Personal Property Law, § 12) required the enforcement of charitable gifts by the Attorney-General and by this court, as the forum having jurisdiction of the estate. It was also stated that the Attorney-General had appeared in this proceeding and had vigorously opposed the contemplated settlement as improvident.

The subsequent testimony taken in the contest and the denial of probate of this will supply further reasons why such settlement agreement should not be consummated. In the exercise of his jurisdiction under the Tilden Act the Surrogate prohibits the Memorial Hospital, the residuary legatee under the prior will, from making any payment either out of any funds that may be derived from this estate or otherwise to the proponent or to any of the other contestants. He also directs that its attorneys' fees and expenses in this contest and in the administration of the estate, be submitted to the determination of the Surrogate's Court for the purpose of testing their reasonableness.

Tax costs and submit decree on notice denying probate to the contested paper.

The prior will of December 18, 1935, is directed to be offered for probate with the filing of a proper petition setting forth the names of the persons interested. Citation shall issue to the

known and unknown next of kin and to the other necessary parties. The Public Administrator, the Alien Property Custodian and the Attorney-General are directed to be cited therein. Proceed accordingly.