In the Matter of the Probate of the Will of ELLYN H. BRUSH, Deceased. KATHARINE S. HUTCHINSON et al., Appellants; LINDA PRINGLE, Respondent.

First Department, June 12, 1956.

*Joseph G. Blum* of counsel (*Leanora S. Gruber* with him on the brief; *Blum, Jolles, Gruber, Szabad & Gersen*, attorneys), for appellants.

*Louis Zimmerman* of counsel (*Howard Zimmerman* with him on the brief; *Jack G. Lieberman*, attorney), for respondent.

Cox, J. In this contested probate proceeding, the contestants appeal from the decree of the Surrogate's Court, New York County, admitting decedent's will to probate after a trial before the court and a jury on framed issues relating to testamentary capacity and undue influence.

The decedent died at the age of 83 years, survived by two distributees, a niece and a nephew, who are the contestants. Both niece and nephew had been on friendly terms with the decedent. On July 6, 1954, less than three months prior to her death, the decedent executed the will admitted to probate, under which she left her entire estate to the proponent, a stranger in blood. For several years immediately prior to the death of the decedent the proponent had been employed as decedent's housekeeper, nurse, secretary, companion and for a time had acted as attorney in fact with respect to some of the

decedent's monetary affairs. The two lived together in a small apartment. In consequence of this very close relationship, proponent was in a position to dominate and influence the decedent.

At the time of execution of the will and for some time prior thereto, the decedent had been suffering from a number of serious ailments. There was evidence that the decedent maintained a belief that she had died during an operation and had been restored to life by the "right thinking" of proponent and friends and acquaintances and that on other occasions she had been helped physically by the "right thinking" of the proponent.

In a prior will executed by the decedent in April, 1953, she left approximately one half of her estate to her niece and nephew and the remainder to the proponent.

The issues were close and substantial evidence was adduced by the parties in support of their respective positions. The question for review concerns the court's charge to the jury.

A question of fact for the jury to determine was whether the decedent believed that she was brought back to life by the "right thinking" of the proponent and, if such were her belief, whether it was the product of an insane delusion which affected the testamentary disposition of her property.

Upon these issues the court in defining the term "testamentary capacity" stated that "a person has a sound mind and is competent to dispose of her estate by will if she has capacity to comprehend the nature and extent of her property, her relationship to the persons who are the natural objects of her bounty, and the nature of the provisions of the will." The court then instructed the jury that the decedent's supposed belief that she was helped physically by the thoughts of others was to be considered with all other evidence on the question of decedent's competency to make a will; that such "belief must be of such a nature that it affected the testamentary disposition of her property, and must be of such degree and influence that it resulted in decedent not having, at the time she executed the paper, the required testamentary capacity as I have defined that term."

By this charge the jury was instructed that in order to invalidate the will it must find not only that the decedent held a belief — a delusion — which affected the testamentary disposition of her property but in addition thereto she must have lacked general testamentary capacity as that term had been defined earlier in the charge.

In our opinion this was error, for despite the existence of testamentary capacity as the term was defined for the jury, the decedent could at the same time have harbored an insane delusion which controlled the testamentary act and rendered it invalid (*Matter of Gannon*, 2 Misc. 329, 332–333, affd. on opinion below 139 N. Y. 654; *Colhoun* v. *Jones*, 2 Redf. 34, 37; *Matter of Jenkins*, 39 Misc. 618; *Matter of Rice*, 173 Misc. 1038, 1041–1042; 1 Davids on New York Law of Wills, § 141, p. 259).

As was said by the General Term of the Court of Common Pleas in *Matter of Gannon* (*supra,* pp. 332–333): " In order to invalidate a will it is not necessary that the intellect should be in total eclipse and oblivion or that the testator should be generally insane. There is a partial insanity and a total insanity. Such partial insanity may exist as respects particular persons, things or subjects, while as to others the person may not be destitute of the use of reason."

" Whenever it appears that the will is the direct offspring of such partial insanity, it must be regarded as invalid, though the general capacity of the testator is unimpeached " (*Colhoun* v. *Jones, supra,* p. 37).

With respect to the change in the decedent's testamentary plan from her prior will executed about 15 months earlier, the jury was instructed that:

" The validity of the prior will is not in issue in this proceeding. It is of value as proof of the testamentary intentions of the decedent as of the date the prior will was made; that is, in April, 1953. * * *

" No inference of undue influence results from the facts that the will differs from the prior instrument. Mrs. Brush had the right to change her mind as she wished, so long as the propounded paper expresses her true wish."

In excepting to this portion of the charge, counsel for the contestants requested an instruction that a change in testamentary intentions made at a time when the decedent was ill should be scrutinized closely with a view to ascertaining whether the act was free, voluntary and intelligent. The request was refused.

The effect of the court's charge and its refusal to charge as requested was to remove the provisions of the prior will from the jury's consideration, contrary to the rule that a radical change in testamentary intentions by an aged and sick person under circumstances conducive to undue influence are important elements to be considered (*Children's Aid Soc.* v. *Loveridge,* 70 N. Y. 387, 402; *McLaughlin* v. *McDevitt,* 63 N. Y. 213, 217; *Matter of Lachat,* 184 Misc. 492, 497).

In *Matter of Lachat (supra,* p. 497), Surrogate FOLEY observed that: " A change of intent from a formal instrument, with a carefully thought-out plan of distribution to a subsequent plan which benefits a person charged with undue influence is always an important element for consideration in a contest."

Since it is impossible to determine with any degree of certainty whether the jury in this closely contested proceeding was not influenced by these errors, the interests of justice require a new trial.

The decree appealed from should be reversed on the law and a new trial ordered, with costs to appellants to abide the event.

The notice of appeal recites orders denying motions of contestants. These orders are not discussed in the points of the parties and are not passed upon by this court. In view of the direction for a new trial, the parties may make such motions incident thereto as they may be advised.

RABIN and BERGAN, JJ. concur with COX, J.; BREITEL, J. P., and BOTEIN, J., dissent and vote to affirm in the following memorandum: We agree with the statements of law contained in the majority opinion, but believe that on the whole charge and the rulings on requests the jury was correctly informed as to the applicable principles.

Decree reversed and new trial ordered, with costs to the appellants to abide the event.