Argued December 18, 1958, reversed February 4, petition for rehearing denied March 12, 1959

In the Matter of the
Estate of PAULINE QUAID, Deceased
HOFEN *v.* UNITED STATES NATIONAL
BANK et al

335 P. 2d 86

*William E. Tassock*, Portland, argued the cause for appellant. With him on the briefs were David K. Young, David W. Dardano, and Charles S. Crookham, Portland.

*Keith W. Caldwell*, Portland, argued the cause for respondents United States National Bank and The Archbishop of Baker. With him on the brief were Grant & Fuchs, Baker.

*Catherine Zorn*, Assistant Attorney General, Salem, argued the cause for respondents State Board of Higher Education and Morrow County. With her on the brief was Robert Y. Thornton, Attorney General, Salem.

Before Perry,* Chief Justice, and Lusk, Sloan and O'Connell, Justices.

SLOAN, J.

This is a will contest. The contestant, Katherine Hofen, is the only child and sole heir of the deceased, Pauline Quaid. The defendant United States National Bank is executor of the will in question. The defendants State Board of Higher Education, Morrow County, The Archbishop of Baker, Oregon, Doernbecker Hospital Guild and other individually named defendants are the beneficiaries named in the will. The trial court sustained the will and contestant appeals.

Contestant contends that for more than a year prior to the making of the will her mother, the testatrix, suffered delusions that contestant was attempting to rob and steal from her and charged that contestant

---

* Chief Justice when case was argued.

had made attempts to take her life; that these delusions were without any foundation in fact and were so pronounced and so dominated and contorted the mind of the testatrix that she could not, at the time the will was executed, view her relationship with her daughter with a rational or sane mind. The proponents contend that testatrix was a woman of unusual business acumen; that she was mentally alert, knew of her property and the disposition she wished to make thereof, and was well aware of the terms of her will and executed it freely and voluntarily with proper formality. The same contest applies to a codicil executed several months after the will.

■ We believe there is sufficient evidence to sustain contestant's assertions of insane delusions by a strong preponderance. It is only necessary to summarize a typical part of the evidence upon which we rely. The testimony of neighbors and acquaintances, together with other evidence we shall shortly mention, would establish that prior to May or June of 1943 testatrix and contestant enjoyed the usual mother-daughter relationship of mature people. At that time testatrix was approximately 86 years of age. In May and June of 1943 she was confined in a hospital as a result of an infection in one leg. Following her discharge from the hospital, the attitude of testatrix toward her daughter began an abrupt change. We will mention only a few of the incidents which evidence this change. On one occasion she insisted to a neighbor lady that her daughter had robbed her of all her bed linen and she was obliged to sleep without any linen or cover. The witness went with testatrix to her room and showed to her that all her bed linen was intact. Testratrix then asserted that her daughter had become frightened and returned the linen. On another

occasion she told the witnesses that her daughter had placed a knife in the back of a chair in such a position as to stab testatrix. On June 17, 1943, testatrix was found by police officers near her home in a disoriented condition. She advised the officers her daughter was attempting to kill her with a gun. As a result of this episode the District Attorney's office advised contestant that her mother had accused her of attempted murder. Contestant was requested to move away from the home of her mother, which she did. It appears that testatrix did not see her daughter from that time until long after the will in question was executed on December 29, 1944.

One other item of evidence is so compelling as to require mention. This consists of an exhibit presented by contestant of a considerable number of mutilated and defaced photographs of contestant, taken when she was a child and young woman. All the pictures are torn to small pieces; in each instance the face and the eyes are severely scratched by some sharp instrument. We know that parental, and particularly motherly, instinct is commonly evidenced by the preservation of relics and tokens of the infant and childhood years of the mother's children. The keeping of photographs depicting the years of the childhood is so commonplace that we accept the constant exhibition of pictures by doting parents and grandparents as an everyday fact of life. In this case, therefore, we can only accept the evidence of the preservation of these photographs for over half a century, and the prior affectionate reference made to them, as an indication of the mother's affection for her daughter prior to the time mentioned. That she would thereafter deface the pictures in so cruel a fashion demonstrates an implacable hatred directed at the daughter. We think this unexplained

objective evidence, together with the testimony of the witnesses mentioned, convincingly establishes that the mind of testatrix was so deranged and demented with reference to her daughter that she could not possibly act with reason or rationality in respect to her. The will made not long thereafter was, thereby, the product of an unsound mind. *In re Murray's Estate*, 173 Or 209, 144 P2d 1016; Atkinson on Wills (2d ed), 244-45, § 52. We have no difficulty in finding that this evidence established that testatrix suffered "* * * a false belief, which would be incredible in the same circumstances to the victim thereof were he of sound mind." *In re Klein's Estate*, 28 Wash2d 456, 183 P2d 518, 526.

On the other hand the testimony of the witnesses for the proponents is limited largely to opinion evidence as to the apparent testamentary capacity of the testatrix. They describe her knowledge of her property and her care and attention to the details of its management. The able attorney who prepared her will was not asked if he had inquired of testatrix as to her relationship with her daughter. We can assume that either he did not know, an unlikely result, or that, if elicited, his testimony would have been adverse to the proponents. The witnesses to the will and a representative of the trust department of a bank, who was also present when the will was signed, were probably not familiar with the attitude of this mother toward her daughter. In any event they were not asked and the only testimony of these witnesses is that at the time of execution she appeared to understand what she was doing, was aware that she was making and publishing her will and seemed competent mentally. None of these witnesses made any reference to expressions by the testatrix in reference to her daughter. Two of the witnesses called by proponents had business

negotiations with testatrix at the same time that the will was executed. The testimony of each of these men would cast some doubt upon the mental condition of the testatrix at that time. One of them expressed a knowledge that testatrix held a hatred for her daughter.

■ Evidence that testatrix was otherwise capable of conducting her business affairs and seemingly was possessed of testamentary capacity does not overcome the evidence of mental derangement with respect to the daughter. *Hardy v. Barbour*, 304 SW2d 21, 304 Mo Cas 21; *Sterling v. Dubin*, 6 Ill2d 64, 126 NE2d 718; *In re Brush's Will*, 1 AD2d 625, 152 NYS2d 545.

■ We hold that the will is void and the decree admitting it to probate is reversed. The executor will be required to account and shall be entitled to its reasonable costs and expenses, including the pro rata portion of the statutory fee. In this proceeding it has functioned in an impersonal capacity for the benefit of the estate and is entitled to also recover from the estate its reasonable disbursements herein, including a reasonable attorney's fee. *State Land Board v. Sovenko*, 202 Or 571, 277 P2d 781.

Reversed.