■ In the Matter of the Estate of HELMUT M. ROSENHAIN, Deceased. GABRIELE HAMMERSTEIN, Appellant; IRENE TANNEN

et al., as Executrices of FREDERIC M. ALBERTI, Deceased, et al., Respondents. [597 NYS2d 782] —Casey, J. Appeal from an order of the Surrogate's Court of Delaware County (Estes, S.), entered November 4, 1991, which denied petitioner's application to vacate a decree of judicial settlement on the grounds of fraud, misrepresentation and bias.

The factual and procedural background of this proceeding can be found in our decision on a prior appeal, wherein we remitted the matter to Surrogate's Court for a determination on the merits of petitioner's application to set aside a stipulation and to vacate the resulting decree entered in a prior proceeding (151 AD2d 835). After a hearing on petitioner's claim that the stipulation was the product of undue influence by respondent Lee R. Pearlman, who was petitioner's attorney at the time of the settlement, Surrogate's Court concluded that petitioner was not entitled to any relief. Based upon our review of the record, we see no grounds for disturbing the court's factual findings and conclusions.

Open-court stipulations of settlement are favored by the courts and will not be lightly set aside (Hallock v State of New York, 64 NY2d 224, 230). "Only where there is cause sufficient to invalidate a contract, such as fraud, collusion, mistake or accident, will a party be relieved from the consequences of a stipulation made during litigation" (supra, at 230). As the party seeking to set aside the stipulation, petitioner bore the burden of proving sufficient cause to invalidate the stipulation (see, Barzin v Barzin, 158 AD2d 769, 770, lv dismissed 77 NY2d 834). The credibility of petitioner and the other witness was a substantial factor in the determination of Surrogate's Court and this Court is generally deferential to the trial court's credibility determinations (see, Kellogg v Kellogg, 185 AD2d 426, 427). It is also significant that Surrogate's Court had the opportunity to observe petitioner's demeanor at the time of the stipulation when she was questioned about the voluntariness of her consent and her understanding of the stipulation's terms and conditions (see, Washo v Washo, 170 AD2d 827, 829).

Petitioner testified that during the evening prior to the stipulation, Pearlman used coercion, including a physical assault, in an attempt to force her to settle the prior proceeding. Nevertheless, according to petitioner, she remained steadfast in her refusal to consider a settlement until the following day when Pearlman told her that if she settled she could proceed directly into an appeal which would result in a

prompt reversal of any decree made by Surrogate's Court and an award of all the relief sought by her in the pending proceeding. Petitioner testified that based upon Pearlman's representations she believed that she would not be bound by any of the terms of the stipulation and that she could obtain revenge against Surrogate's Court, the opposing party and opposing counsel by using the settlement as a means of getting to the Appellate Division. Petitioner admitted that after the stipulation was placed upon the record, a voir dire was conducted during which she testified that she understood the terms and conditions of the stipulation and voluntarily agreed to accept the stipulation. According to petitioner, however, her voir dire testimony was based upon her mistaken belief that the stipulation was not binding upon her because she could go directly into an appeal.

Pearlman denied using coercive tactics on petitioner prior to the stipulation, physically assaulting her or making any representations about an appeal. Pearlman testified that during the course of the prior proceeding, his discussions with prospective witnesses led him to believe that petitioner had perjured herself during her earlier testimony. He believed that he could not put those witnesses on the stand without effectively destroying petitioner's credibility and he could not put petitioner back on the stand knowing that she had previously lied. Faced with this dilemma, Pearlman told petitioner she could rest her case at that point in the proceedings, which would probably result in an unfavorable decision from which she could appeal, or negotiate a settlement. According to Pearlman, he recommended that an effort be made to settle the matter, which petitioner rejected. He conceded that their discussions that evening were heated, that he called her a liar and that he may have used profanity. Pearlman testified that the next morning petitioner finally came to view a settlement as a way of getting Frederic M. Alberti out of her life and that she therefore agreed to settle the matter, provided that she would become the executrix of her brother's estate.

The conflicting testimony of petitioner and Pearlman created questions of credibility which Surrogate's Court obviously resolved in favor of Pearlman, despite some discrepancies in Pearlman's testimony. We see no reason to disturb that assessment. To the contrary, petitioner's testimony regarding her understanding of the nature and effect of the stipulation and the availability of appellate relief is implausible at best. The thrust of petitioner's claim at the hearing was that she agreed to the stipulation because of her mistaken belief regarding the

binding effect of the stipulation and the availability and probable results of an appeal; nevertheless, the petition which commenced this proceeding does not assert such a claim as a basis for setting aside the stipulation. Petitioner also testified at the hearing that being named executrix was only a minor concern and not a factor in her decision to settle; however being named executrix was the relief sought in her petition, and in a letter to Surrogate's Court shortly after the stipulation she described being named executrix as "central to everything relating to both the undersigned and my late brother's badly managed Estate".

Petitioner also presented several other witnesses, but none of them gave any testimony which supported petitioner's claim that Pearlman misled her about the binding effect of the stipulation and the availability and likelihood of favorable results of an appeal after settlement. The testimony of Pearlman's former partner was also of little value because of his inability to remember anything other than selected details and his obvious animosity toward Pearlman. One of petitioner's acquaintances testified that he inadvertently observed Pearlman's assault on petitioner, but his explanations as to how he happened to be outside the door to petitioner's motel room and why he did not intervene or reveal his observation for approximately four years, until two weeks before the hearing, are less than convincing. The testimony of the remaining witnesses presented by petitioner was equivocal and of little probative value.

The evidence in the record supports the conclusion of Surrogate's Court that petitioner is not entitled to any relief from the stipulation. On its face, the stipulation is not so unfair or one sided that no reasonable person would agree to it. Petitioner's voir dire testimony at the time of the stipulation established that she understood its terms and that her decision to settle was voluntary. Petitioner's claim of coercion is belied by her own testimony that she remained adamant in her refusal to settle despite the alleged assault and coercion by Pearlman, and her claim of mistake because of Pearlman's alleged representations is not substantiated by credible evidence in the record.

Petitioner also claims that Surrogate's Court erred in permitting Pearlman to testify as to certain out-of-court statements made to him by Myer Zaslansky, a potential witness at the prior proceeding. The statements were not hearsay, however, because they were not offered for the truth contained therein but merely to show that the statements were made

and served as a basis for Pearlman's actions *(see, Welch v Shiffman,* 101 AD2d 948, 949, *lv denied* 63 NY2d 609). Petitioner sought to testify as to Zaslansky's reaction to certain events during the prior proceeding, but such evidence was irrelevant and properly excluded. Accordingly, the order denying petitioner's application should be affirmed.

Weiss, P. J., Mikoll, Yesawich Jr., and Levine, JJ., concur. Ordered that the order is affirmed, with costs.