OPINION OF THE COURT
Lee L. Holzman, J.
In this SCPA 2103 discovery proceeding commenced by the administrator, the estate seeks to recover in excess of $100,000 alleged to have been wrongfully withheld by respondent, who is decedent’s sister and the former conservator of her property. Respondent appeared pro se and a hearing on the merits has been held.
For the last several years of her life, decedent had been a resident of a skilled nursing facility. Respondent was appointed conservator of the property of decedent pursuant to an order of the Supreme Court, Bronx County, dated March 30, 1982 and was removed as the conservator pursuant to an order entered December 12, 1985. Decedent died intestate on August 4, 1988 survived by two siblings and the two children of a predeceased brother. Regular and limited letters of administration issued to petitioner, decedent’s brother. Upon an application by the administrator of this estate in the Supreme Court conservatorship proceeding, an order was entered on August 16, 1990, surcharging respondent the sum of $205,426.79, the total value of decedent’s assets which were alleged to have been misappropriated by respondent during her tenure as the conservator of decedent’s property. Petitioner contends that respondent continued to receive extensive assets belonging to decedent after her removal as conservator. He alleges that these assets were not the subject of the conservatorship surcharge and seeks to recover their value in this proceeding. The assets of decedent allegedly paid to respondent essentially fall into three broad categories: Social Security payments, the proceeds of an annuity insurance policy, and retirement benefits.
Decedent was entitled to receive New York State Employees’ Retirement System Benefits as a result of her prior *873 employment. Respondent conceded that she was the person who, on decedent’s behalf, executed on September 24, 1982 the "Retirement Option Election Form”. She also conceded that decedent was incompetent and that she was the conservator of decedent’s property on that date. However, both respondent and a nephew of decedent testified that decedent had told respondent at a time when she was in the hospital but still competent that she wanted respondent to sign her name to any necessary documents. It was respondent’s position that her right to make the election that she chose on the form flowed from the authority granted to her by decedent when decedent was still competent.
The option that respondent chose for the retirement benefits was a "Joint Allowance-Full” which provided that decedent was to receive a reduced lifetime retirement allowance which would be continued to be paid in the same amount to respondent for her life should respondent survive the decedent. Under the option selected, respondent received the monthly retirement benefit of $381.57 on decedent’s behalf from March 1986 until decedent’s death and after decedent’s death she continued to receive the same monthly benefit in her own right as the designated beneficiary. Inasmuch as the retirement benefits earmarked for decedent while she was alive were made for the benefit of decedent and respondent was unable to establish that she expended these funds for decedent’s benefit, she must, as was the case with the annuity policy proceeds and Social Security payments, be held liable to the estate for these payments.
The determinative issue with regard to the pension payments received from the New York State Employees’ Retirement System after decedent’s death is whether respondent should be permitted to retain these funds as the designated beneficiary or whether equitable principles require that she be deemed the constructive trustee of the benefits for decedent’s estate. Although there was no retirement option that decedent could have selected which would have resulted in payments to her estate in the sum of $381.57 for the life of respondent, she could have selected other options which would have resulted in either greater payments to decedent for her life or payments to her estate in the event that she did not receive a certain amount of payments during her lifetime and she did not designate another beneficiary for the amount to be paid after her death.
The plight of respondent calls for sympathy to the extent *874 that she does not appear to be a sophisticated person who could be expected to understand all of the obligations of a fiduciary. Furthermore, she appears to have been the person in whom the decedent had the greatest confidence. Respondent’s contention that decedent would have wanted her to receive the benefits might be inferred from the document which she submitted which indicates that decedent was registered as a member in the New York State Employees’ Retirement System as of December 11, 1962 and that she had designated respondent as the beneficiary of the benefits available at that time. However, the benefits of which respondent was named as the beneficiary by decedent are not the benefits at issue in this proceeding as contended by respondent but instead are the benefits which would have been paid had decedent died while in service.
Assuming arguendo that respondent had been validly appointed as decedent’s attorney-in-fact to act on her behalf in the selection of a retirement benefit, this status by itself would have given respondent the power but not the right to name herself as one of the beneficiaries of the retirement benefit. Respondent, as decedent’s attorney-in-fact, did not have the right to use the power of attorney to make a gift to herself absent an explicit authorization from decedent to use the power for that purpose (Lowery v Erskine, 113 NY 52; Matter of Lalor, 28 AD2d 66; Matter of Robertson, 191 Misc 956). Respondent failed to establish that decedent explicitly authorized her to use the power of attorney to make a gift to herself. Although the 1962 designation of respondent as the beneficiary of benefits that would have been paid had decedent died in service reflects that decedent was fond of respondent at that time and the totality of the proof reflects that decedent placed the greatest confidence in respondent while she was competent, it cannot be concluded with any degree of certainty from the proof adduced that decedent, had she been competent on September 24, 1982, would have selected reduced retirement benefits for herself so that respondent could be designated as a contingent beneficiary of the benefits.
Respondent’s status as conservator of decedent’s property does not place her in any better position with regard to the retirement benefits than her possible status as decedent’s attorney-in-fact. Respondent had a duty in her capacity as decedent’s conservator to prevent her own interests from conflicting with the interests of decedent (see, Matter of Rothko, 43 NY2d 305; Meinhard v Salmon, 249 NY 458; *875 Munson v Syracuse, Geneva & Corning R. R. Co., 103 NY 58). Such a conflict clearly arose when respondent selected an option for decedent’s retirement benefits which reduced decedent’s benefits so that benefits might be continued to be paid to respondent after decedent’s death. If a fiduciary believes self-dealing should be permitted because of "extraordinary circumstances”, an exception to the rule that business decisions are within the discretion of the fiduciary rather than the court is applicable and authorization for the self-dealing transaction can be obtained from the court if it is established that the transaction is in the best interests of the parties to whom the fiduciary obligation is owed (Matter of Tennenbaum, 20 AD2d 808, affd 15 NY2d 829). Thus, if respondent believed that the option selected by her was in the decedent’s best interest and in accord with what decedent would have selected had she been competent to make such a selection, she should have sought court approval. To presume or speculate that such an application would have been granted would be tantamount to condoning respondent’s failure to seek prior court approval of this self-dealing transaction and would be detrimental to encouraging compliance with the high standards required of a fiduciary.
Accordingly, it is concluded that respondent was named as the beneficiary of the benefits as a result of having breached her fiduciary responsibilities to decedent. Respondent cannot be permitted to benefit from this breach of fiduciary responsibility and therefore decedent’s estate rather than respondent must be the recipient of all of the retirement benefits even though there was no way this exact result could have been achieved by any of the possible options. This must be the result regardless of whether the theory is that fiduciaries cannot benefit from self-dealing (Matter of Rothko, supra); that persons may not benefit from their own wrongful acts (Riggs v Palmer, 115 NY 506); or that a constructive trust should be imposed to prevent unjust enrichment (Simonds v Simonds, 45 NY2d 233). The constructive trust remedy is the most appropriate because pursuant to it respondent is converted from the legal holder of the proceeds of the benefits paid and to be paid to a constructive trustee whose sole responsibility is to transfer the benefits to the estate (Simonds v Simonds, supra, at 241).
[Portions of opinion omitted for purposes of publication.]