[623 NYS2d 653]

In the Matter of the Estate of CECILIA ZIELINSKI, Deceased. BARBARA MOCZULSKI, Appellant; EUGENE J. ZIELINSKI, Respondent.

EUGENE J. ZIELINSKI et al., Respondents, v BARBARA MOCZULSKI, Appellant.

Third Department, March 16, 1995

APPEARANCES OF COUNSEL

*Drago & Drago,* Schenectady *(Karen A. Drago* of counsel), for appellant.

*Harris, Beach & Wilcox,* Albany *(Roland M. Cavalier* of counsel), for respondents.

**OPINION OF THE COURT**

PETERS, J.

Cecilia Zielinski (hereinafter decedent) was admitted to the hospital on May 30, 1992 and diagnosed with colon cancer shortly thereafter. While in the hospital, she was seen on a daily basis by her sister, Barbara Moczulski (hereinafter proponent) and her sister's husband. On or about June 23, 1992 while still in the hospital, decedent executed a will, in the presence of proponent, which provided for the distribution of her residuary estate in equal shares to proponent and proponent's husband. Neither decedent's only son, Eugene J. Zielinski, her two grandchildren, her five great-grandchildren nor any of decedent's other lineal decedents were named as beneficiaries. Her assets consisted of a house and approximately 200 savings bonds worth approximately $360,000. Such bonds were purchased by decedent over a 20-year period and were either in the sole name of an intended beneficiary, in the joint name

of decedent and a beneficiary, or in decedent's name with "payable on death" designations to a beneficiary. Every beneficiary was either decedent's grandchild or great-grandchild. No bonds were issued in the name of proponent, proponent's husband or any of decedent's other siblings.

On the day that the will was executed, decedent also signed a power of attorney in favor of proponent. Pursuant to the power of attorney, proponent attempted to redeem each and every one of decedent's savings bonds but was successful in redeeming only those bonds held in decedent's name or jointly by decedent and either one of her grandchildren or great-grandchildren. Decedent died on September 25, 1992. On November 6, 1992, after holding a check for the proceeds of the bonds, proponent placed the funds, totaling $354,944.08, in a bank account in decedent's name. As the sole beneficiaries under decedent's will, proponent and her husband became the beneficiaries of these proceeds.

When proponent brought a petition for probate of the will in Surrogate's Court, Zielinski filed objections which claimed, *inter alia,* that decedent lacked testamentary capacity. He thereafter joined decedent's grandchildren and great-grandchildren (hereinafter collectively referred to as the challengers) in a separate action against proponent in Supreme Court to recover the proceeds of the bonds. A consolidated nonjury trial was held in Surrogate's Court which resulted in a denial of the petition for probate and a direction to proponent to pay the named beneficiaries in accordance with the amounts they would have received had the bonds not been redeemed. Proponent appeals.

In a nonjury trial, while our power to review the evidence is as broad as that of the trial court *(see, Levy v Kurpil,* 168 AD2d 881, *lv denied* 77 NY2d 808), we will not disturb the trial court's decision if it is found to be supported by the weight of the credible evidence *(see, Stratton v Keefe,* 191 AD2d 871). Based upon the evidence adduced at trial, we agree with Surrogate's Court that proponent made a prima facie showing of the requisite testamentary capacity *(see, Matter of Kumstar,* 66 NY2d 691). The burden thereby shifted to the challengers to show that decedent's mind was affected by an insane delusion regarding her son *(see, Matter of Etoll,* 30 AD2d 224). Noting the difficulty of such burden, we nonetheless find that Surrogate's Court properly concluded that decedent was suffering from an insane delusion which directly affected her decision not to leave anything to her son *(see,*

*Matter of Honigman,* 8 NY2d 244). With proponent thereafter failing to demonstrate that the delusions had a reasonable basis, we find that the credible evidence supports Surrogate's Court's determination.

The expert testimony of Abdul Hameed, the consulting psychiatrist at the hospital where decedent had been admitted, indicated that decedent was diagnosed on the date of her admission as suffering from a delusional disorder regarding her son. Such psychiatrist testified that decedent told him that Zielinski had injected her in her buttocks and that her husband (since deceased) and her doctors had been involved in the plan. Hameed further testified that when he next examined decedent on June 9 and 10, 1992, she continued to verbalize these delusions. He opined that patients with this disorder could be competent in some respects and delusional with respect to others.

Testimony of a second psychiatrist, Zoser Mohammed, who examined decedent on June 15, 1992, confirmed Hameed's diagnosis. Decedent told Mohammed that her husband broke her legs and that Zielinski was getting instructions from a "device" that turned the world inside out. Mohammed confirmed that a person could exhibit appropriate behavior apart from the specific delusion. Testimony from decedent's attending nurses confirmed the delusional statements regarding decedent's son. Two additional psychiatrists, one proffered by proponent and the other by the challengers, confirmed such diagnosis after their review of the medical records. Both testified that such delusions may have directly affected decedent's decision to exclude Zielinski from the will.

Lay testimony included that of Patricia Russo, an employee of Zielinski, who knew decedent since 1979. She testified that decedent continuously made delusional statements from 1979 to 1992 regarding the placement of balloons in her stomach by Zielinski, that her husband ran over her legs and put someone else's legs on her, that Zielinski injected chemicals into her, and that there was a conspiracy by and between her husband, her son and her doctors. Donna Loro, another employee of Zielinski, testified that from as far back as 1965, decedent told her of a conspiracy between decedent's husband, her dentist and her son in trying to put needles into her to make her ill, and Loro reiterated decedent's tales of "balloons" and "devices".

Zielinski's former spouse, Jean Smith, testified similarly and

advised that such statements dated from 1973 when she first met decedent. She added that decedent advised her that her husband and doctors pushed her eyes back into her head and that decedent regularly spit into a jar to save as evidence of what Zielinski and her husband had done to her. Zielinski and one of his employees testified to finding approximately 25 to 30 one-gallon jars in decedent's closet, apparently filled with the saliva she had saved. Zielinski's current spouse, Lynn Zielinski, testified that when she met decedent in 1979, decedent told her about her legs being substituted and the balloons. She further confirmed prior testimony about the "devices" and the spitting into a jar. While she testified that decedent mostly blamed her husband, after decedent's husband became ill such witness testified that decedent's focus shifted to Zielinski. All such witnesses, including Zielinski, testified that there was no basis for such statements and that there existed a good relationship between Zielinski and decedent.

Recognizing that there was testimony indicating that decedent was capable of leading a normal life, we note that a person suffering from an insane delusion can still be competent to manage their own affairs and, if the person's behavior is not centered on the subject of the delusion, can appear to be normal (see, Matter of Honigman, 8 NY2d 244, 250, supra). Moreover, where, as here, the credibility of both the lay and expert witnesses was a substantial factor in the determination of Surrogate's Court, this Court will be deferential to the trial court's determinations (see, Matter of Rosenhain, 193 AD2d 903, lv dismissed 82 NY2d 820), so long as such conclusions were not against the weight of the credible evidence. We find that they were not.

Even if it could be said that decedent had general testamentary capacity, she could, at the same time, have an insane delusion which controlled the testamentary act, thus rendering it invalid (see, Matter of Brush, 1 AD2d 625). " 'In order to invalidate a will it is not necessary that the intellect * * * be in total eclipse * * *. There is a partial insanity and a total insanity. Such partial insanity may exist as respects particular persons * * * while as to others the person may not be destitute of the use of reason' " (supra, at 628, quoting Matter of Gannon's Will, 2 Misc 329, 332-333, affd on opn below 139 NY 654). We find that the testimony fully supports the conclusion that decedent was suffering from an insane delusion regarding her son and that this delusion directly affected her

decision not to leave anything to him under her will *(see, Matter of Kumstar,* 66 NY2d 691, 692, *supra; Matter of Rice,* 173 Misc 1038). We further find that Surrogate's Court properly determined that proponent failed to show that the delusions had a rational basis *(see, Matter of Etoll,* 30 AD2d 224, 229, *supra).* Although suggesting possible reasons for the exclusion of Zielinski from the will, we find that there was no evidence presented of any reasonable basis for the delusion *(see, Matter of Rice, supra).* Rather, there was sufficient credible evidence that Zielinski had a good relationship with decedent and that her delusions were chronic. Based upon the expert testimony, decedent was not capable of lucid intervals where it could have been determined that decedent had the requisite testamentary capacity at the time of the execution of the will.

■ We further find sufficient credible evidence to support the conclusion by Surrogate's Court that proponent, in redeeming the savings bonds at issue, intended to make a gift to herself and in so doing breached her fiduciary duty to decedent *(see, Levy v Braley,* 176 AD2d 1030). Although proponent proffered the testimony of a bank employee, indicating that when the bonds were redeemed proponent clearly indicated that she did so on decedent's behalf, and that she thereafter deposited the money in a bank account only in decedent's name, we find ample evidence in the record to support the conclusion of self-dealing. The record is replete with evidence that proponent was fully aware, before such redemption, that decedent had incurable cancer and that proponent and her husband were the sole beneficiaries under decedent's will. We further find that there was no evidence that decedent intended to make a gift of the proceeds to proponent or that she was aware that the bonds were being redeemed. Since the requisite donative intent, delivery and acceptance were not established *(see, Matter of Partos,* 203 AD2d 578; *Matter of Van Patten,* 190 AD2d 322), we find that proponent, as decedent's attorney-in-fact, incorrectly exercised her authority to make a gift to herself *(see, Semmler v Naples,* 166 AD2d 751, *appeal dismissed* 77 NY2d 936; *Matter of Griffin,* 160 Misc 2d 871).

Finding the remaining contentions raised to be without merit, we affirm the decree and judgment of Surrogate's Court in their entirety.

CARDONA, P. J., MERCURE, CASEY and SPAIN, JJ., concur.

Ordered that the decree and judgment are affirmed, with costs.