IN RE ESTATE OF ARCHIBALD LIVINGSTON, Deceased.

HUGH LIVINGSTON, Appellee, v. JAMES H. LIVINGSTON et al., Appellants.

APPEAL AND ERROR: Fact Stipulation in Lower Court—Conclusiveness on Appeal. A ruling based on a fact stipulation, entered in the lower court, may not be questioned on appeal.

1

PRINCIPLE APPLIED: A will contestant admitted of record "that all formalities of the execution of the will and the two codicils had been complied with," reserving the right, however, to show mental incapacity and undue influence. An order admitting the instruments to probate was entered. *Held*, contestant would not be heard to say the ruling was erroneous.

WILLS: Custody—Proper Party to Produce. It is immaterial who produces the will for probate. The important fact is that it is produced.

2

WILLS: Order Admitting to Probate—Presumption. It will be presumed, in support of an order admitting a will to probate, that

3

such order was only made after the proof exacted by the law was made.

**WILLS: Contest—Contestant Must Have Interest in Estate.** He who would contest the validity of a will must show that he has an interest in the estate in case the contest is successful. Whenever this lack of interest appears (there being due proof of the signing and witnessing), the court will dismiss the contest and admit the will to probate, even though there is evidence to sustain the ground of contest.

PRINCIPLE APPLIED: A testator executed a will, and later, on two separate occasions, executed two separate codicils thereto. An heir filed a contest of the will and codicils, alleging (a) undue influence and (b) mental incompetency. At the close of the evidence, the record revealed the fact that there was no evidence impeaching the will and first codicil on either of the grounds alleged, but sufficient evidence to pass to the jury on the mental incompetency of the testator at the time of the execution of the second codicil. But the will and first codicil wholly excluded the contestant from any share in the estate. There was sufficient proof of the due signing and witnessing of the three instruments. *Held*, the will and *both* codicils should be admitted to probate and the contest dismissed.

*Appeal from Delaware District Court.*—FRANKLIN C. PLATT, Judge.

THURSDAY, JUNE 24, 1915.

REHEARING DENIED MONDAY, JANUARY 22, 1917.

ARCHIBALD LIVINGSTON died testate March 19, 1909, and objections to the probate of his will and two codicils were filed by lateral heirs. On trial, a verdict for proponent was directed, and an order entered admitting the will and codicils to probate. The contestants appeal.—*Affirmed.*

*I. N. Flickinger, W. H. Norris, W. H. Welch, J. F. Patterson,* and *Carr & Carr,* for appellants.

*E. C. Perkins, J. H. Trewin* and *Yoran & Yoran,* for appellee.

LADD, J.—Archibald Livingston never married, and left lateral heirs only. He was 83 or 84 years old at the

time of his death, March 19, 1909. H. Livingston, named as executor in the second codicil, filed the affidavit of death with the clerk of the district court, together with a will and two codicils purporting to have been executed by the deceased. Thereupon, said clerk opened, read and filed said will and codicils, and fixed the time for the probate of same. The will, purporting to have been executed October 10, 1905, directed that all just debts and the expenses of funeral and administration be first paid; that $1,000 be paid to a nephew, James Livingston; and that $500 be turned over to the trustees of the Oakwood Cemetery Association, the income to be used for the care of the lot in which his remains were buried, and any surplus to be devoted to the care of neglected graves, keeping the ground in proper condition and beautifying the same. It also directed that he be buried in said cemetery, and that his last resting place be marked by a suitable monument. The third item directed the sale of all real and personal property of which he died seized, as soon as this might be done to advantage, for cash or partly in cash and secured notes. In Item 4, he directed his executor to turn over all that might remain of his estate to three trustees, "to be held in trust by them, and I hereby devise and bequeath to said H. M. Carpenter, Wm. H. Stuhler and M. W. Herrick, all of my estate that may remain at the close of the administration thereof, in trust, to be invested and used for the purposes following, to wit:

"1. Said trustees shall invest such money and property in good real estate mortgages or bonds, or other securities of unquestionable value, and when the principal and interest of my bequest, together with any sums that may be donated by outside parties, shall 'reach the amount of at least $25,000, they shall purchase or secure by donation suitable grounds and erect thereon a sanitarium to be called the Archibald Livingston Sanitarium, the same to

be located in the city of Monticello, Jones County, Iowa. The income of any portion of the amount that may remain after the sanitarium is erected and furnished, shall be used for the support and maintenance of said sanitarium. And I hereby direct that when said sanitarium shall be so erected and furnished that the worthy, needy, sick and infirm people of said city of Monticello and Lovell Township, Delaware County, Iowa, shall receive nursing, care and medical treatment at said sanitarium as they may need the same, under such rules and regulations as shall be made by the board of trustees, who shall have charge and control of the sanitarium. But all persons who are able to pay, wholly or in part, for their care and treatment at said sanitarium, and who are received therein, shall pay therefor such reasonable sum as shall be required by the board of trustees."

And then he directed that said trustees yearly publish, in some paper at Monticello, a complete statement of the condition of the funds, and report at least every two years the details as to the management of said fund and sanitarium, provided for the appointment of the trustees in the event of a vacancy, and directed that trustees be empowered to make all needful rules and regulations for the government of the sanitarium, and be given full authority to carry out the purposes of the bequest. H. M. Carpenter was named as executor. On the 26th day of October following, he executed a codicil withdrawing the legacy to James Livingston, inasmuch as he had paid him $500 in cash, which he said James preferred to the legacy. A few months before his death, January 29, 1909, the deceased signed a codicil, which was duly witnessed, in words following:

"I, Archibald Livingston, of South Fork Township, Delaware County, Iowa, being of sound mind and memory but aware of the uncertainty of life, do make this change and additions to my will heretofore made.

"First. The trustees under my will shall be H. M.

Carpenter heretofore named, and Robert J. Stirton, of Monticello, Iowa, and Hugh Livingston of Hopkinton, Iowa, who shall execute and carry out the will heretofore made subject to the following conditions: Within two years after my death the town or city of Monticello, Iowa, shall raise in cash to aid in the erection and maintenance of the hospital named and mentioned in my said will, the sum of $50,000, and if the town or city of Monticello, Jones County, Iowa, refuse or fails to raise said sum of $50,000 within said time, then my will shall become null and void as to any provisions for a hospital. If the city of Monticello, Iowa, fails to provide the aid and help as herein set out for said hospital then and in that event I give, devise and bequeath my said estate heretofore willed in trust for a hospital at Monticello, Iowa, to Lenox College at Hopkinton, Iowa, for the purpose of an experimental station in farming and domestic science in South Fork Township, Delaware County, Iowa, to be known as the Archibald Livingston Home. And this gift is upon the condition that said Lenox College shall within one year after the expiration of the time or the refusal of Monticello, Iowa, to raise funds as required to aid in the erection and maintenance of said hospital as herein and heretofore provided, raise $25,000 to equip said Archibald Livingston Home and to be added to the gift herein given and to be known as Archibald Livingston Home and made an experimental home for college students. If the conditions herein are not accepted by the town or city of Monticello, Iowa, or Lenox College of Hopkinton, Iowa, then my said estate shall go to my legal heirs as law gives share and share alike. This my will changes trustees and conditions imposed upon my said estate. I hereby appoint Hugh Livingston executor of my said estate."

Nineteen lateral heirs filed objections in two divisions. In the first division, alleged reasons are given why Lenox

College cannot take under the will, and in the second division, contestants say: (1) That the will and last codicil were obtained by undue influence; (2) that they were executed at a time when testator was incapable of making a valid will; and (3) that the last codicil was signed when deceased was totally incompetent and incapable of executing a will.   There was a trial to the jury, at which no evidence whatever was introduced tending to show that the will and the first codicil were the result of undue influence, or that the deceased was not competent, in signing these, to execute a will.   Without reviewing the evidence, it is enough to say that there was evidence sufficient to carry the issue to the jury as to defendant's mental capacity at the time of signing the second codicil.   After the contestants had introduced evidence and rested, the proponent moved: (1) That the will and first codicil be admitted to probate, as no evidence had been introduced tending to invalidate them; (2) that all question as to undue influence or testamentary capacity in executing the second codicil be withdrawn because of insufficiency of evidence bearing thereon; and (3) that all objections on the part of the contestants be stricken from the record, and all evidence bearing thereon, on the ground that none of them had any interest in the estate of the deceased.

1. APPEAL AND ERROR: fact stipulation in lower court: conclusiveness on appeal.

After the jury had been impaneled, and before the evidence was introduced, it was mutually agreed "that the record may show that contestants admit that the will and two codicils in controversy were executed in legal form, signed by the testator in the presence of the witnesses, and that the witnesses signed their names thereto in proper form at his request, and that all formalities of the execution of the will and the two codicils have been complied with," reserving, however, the right to contest the mental capacity of and to assert the exercise of undue

influence on the deceased.   In the light of this stipulation, it is not very material to this controversy whether any evidence was introduced establishing the execution of the will and first codicil, for defendants, having expressly admitted the due execution of the will in conformity to the statute, are not in a situation to controvert this fact on appeal.

2. WILLS: custody: proper party to produce.

It is said, however, that the will and codicils were not presented to the court, and especially that this was not done by anyone having the authority or right to do so.   Section 3282, Code, 1897, exacts that:

"Any person having the custody of a will, shall, as soon as he is informed of the death of the. testator, file the same with the clerk.   Any person who fails to produce the same after receiving reasonable notice so to do may be committed to jail until he does, and shall be liable for all damages occasioned by his failure."

It is not material who may have presented this will and codicils to the clerk; it is enough that they were presented by someone (i. e., Hugh Livingston) ; and, having been so. turned over, the clerk of the district court had no option save to comply with Section 3283 of the Code, which provides that:

"After the will is produced, the clerk shall open and read the same, and a day shall be fixed by the court or clerk for proving it, which shall be during a term of court, and may be postponed from time to time in the discretion of the court.   When the probate of a will is contested, either party to the contest shall be entitled to a jury trial thereon."

But Livingston was nominated in the second codicil as executor.   This codicil was connected with, and purported to modify in certain respects, the original will, and it was entirely appropriate for him as executor to tender both the will and the codicils for probate.   *In re Estate of Jones,*

130 Iowa 177; *Meeker v. Meeker,* 74 Iowa 352; *In re Estate of Smith,* 165 Iowa 614. Indeed, it is quite generally held to be the moral, if not the imperative legal, obligation of the person named as executor in a will to produce the same for probate. *Zimmer v. Saier,* (Mich.) 119 N. W. 433; *Dodd v. Anderson,* (N. Y.) 90 N. E. 1137. The clerk presumably followed this statute and fixed the day for hearing. These contestants objected thereto, and the issue before the court was: (1) Whether the will and first codicil should be admitted to probate; and (2) whether the second codicil should be so admitted. The contestants

**3. WILLS: order admitting to probate: presumption.** waived all formal proof in support of the first two instruments, and it is to be presumed in favor of the order of the court admitting the will and the two codicils to probate that, as to any other interested party, the proof exacted by the law was made. If not, it was of no concern to appellants.

It necessarily follows that, as no evi-

**4. WILLS: contest: contestant must have interest in estate.** dence was adduced assailing the validity of the execution of the will and first codicil, the court rightly sustained the proponent's motion to admit to probate. In any event, the contestants, having admitted their due execution, cannot now insist that the ruling was erroneous. We have then this situation: The record discloses that the will and first codicil were duly executed and entitled to probate, that these disposed of all of the estate of the deceased otherwise than to contestants, and that, if these are to stand, as they must, then the contestants have no interest whatever in the estate. How then can the contestants be concerned whether the second codicil be upheld as valid or be found to have been the result of undue influence or mental incapacity, rather than the voluntary act of the testator? If the second codicil be set aside and refused admission to probate, the contestants would take nothing, nor would they if it were sus-

tained, and, having admitted the due execution of the will and the first codicil, they are not in a situation to rely upon any possible future contest on the will and first codicil.

It was held in *In re Probate of Will of Fallon*, 107 Iowa 120, that, in order to have any standing to contest the execution of a will, one must have some interest in the estate of the deceased. See, also, *In re Estate of Smith*, 165 Iowa 614; *Wilcoxon v. Wilcoxon*, (Ill.) 46 N. E. 369. In the latter case, after considering other grounds, the court said:

"Independent of what we have said, we are unable to see upon what theory it can be held that the complainant in this bill has any standing whatever in a court of equity. His bill recognizes the validity of the will of 1852. That will, as we have already said, in the most comprehensive and unequivocal terms, gives to Cyende Wilcoxon, absolutely and unconditionally, all the property of every description of which the testator should die seised. The codicil only purports to express a further desire in the disposition of his estate if his wife Cyende should die before he did, and expressly reaffirms the bequest made in the original will. In other words, the force and effect of the codicil depended wholly upon the fact as to whether or not the wife should survive him. The bill itself alleges that she did survive him, and she is made a party thereto. How, then, can it be said that the execution of this codicil in any way affected the rights or interests of Thomas D. Wilcoxon, the complainant below? Certainly it interferes in no way with any devise or legacy which he may receive from Abigail M. Wilcoxon, because, if he receive any such devise or legacy, he does so through her will, and independent of any act of his father. If it be said that the codicil obstructs his right to receive an interest in his father's estate, the answer is that that estate is wholly disposed of by the original will, vesting it in the widow, Cyende Wilcoxon. So as to the deed. When Thompson Wilcoxon died, that moment, under

the provisions of his will, all his real estate, both in law and in equity, vested in his devisee, Cyende Wilcoxon, his wife. If this decree should stand, holding that deed void and of no effect, who is the owner of the land? Certainly not the heirs of Thompson Wilcoxon, because, by a will the validity of which is not questioned, it is given to the widow. It certainly will not be denied that, upon the affirmance of the decree below, vacating and annulling that deed, she might instantly convey it to the same children, dispose of it by will, or, if she should die intestate, it would descend to her heirs. In any view, Thomas D. Wilcoxon has no interest whatever in this litigation, and can practically receive no benefit, directly or indirectly, from the decrees below, and for that reason, as well as because they are not supported by the evidence, they will be reversed, and the cause remanded to the circuit court, with directions to dismiss the bill."

The only difference between that case and this is that there the will had been admitted to probate before, while here this was done at the time of, trial. There is no difference in principle between the cases. Appellants rely somewhat on *Murphy's Exr. v. Murphy,* (Ky.) 65 S. W. 165, where it was held that:

"An heir was entitled to contest testator's will which was probated, though he was also executor by a previous will which had not been probated, as the previous will might never be offered for probate, and if so might also be the subject of contest."

The case is not in point, for here the will was submitted for probate at the time of the contest, and in the judgment complained of, actually admitted. As it was demonstrated in the course of the trial that plaintiffs were without interest, the court very properly struck from the files the objections to the execution of the second codicil, and

directed the jury to return a verdict for the proponent, and
ordered the will and both codicils admitted to probate.—
*Affirmed.*

GAYNOR, C. J., DEEMER and SALINGER, JJ., concur.