In the Matter of the Estate of HENRY DAZIAN, Deceased.

Surrogate's Court, New York County, March 24, 1938.

Proskauer, Rose & Paskus [G. F. Kurzman and David Katz of counsel], for the proponent, petitioner.

Jacob I. Goodstein, for The Actors' Fund of America.

Kraushaar & Klapper, for Sophie Cohen, contestant.

I. T. Flatto, for other contestants.

I. Montefiore Levy, for the New York Guild for the Jewish Blind.

De Forest, Cullom & Elder, for The Metropolitan Museum of Art.

John J. Bennett, Jr., Attorney-General, for the State of New York.

FOLEY, S. The question presented for determination in this proceeding brought for the construction of the will, is the validity or invalidity of a gift for charitable purposes.

Henry Dazian, the testator, in the eighth paragraph of his will, directed the creation of a corporation to be known as the Dazian Foundation for Medical Research. The primary gift was to his executors in trust to pay over the income annually to the foundation for a period of twenty-five years unless sooner terminated. The foundation to be created by the executors, in obedience to the mandate of the testator, is to have as " its fundamental and primary purpose the advancement of medical and allied scientific knowledge." A further definition of its objects and purposes is set forth in directions that the income be applied in part (1) for the creation of fellowships " to consist of post-graduate education along specialized lines in some science or subject directly or indirectly associated with medical science for persons already possessing a degree of doctor of medicine," and (2) in making contributions " to laboratories, hospitals or similar institutions not operated for profit, to be used in research or investigation for the advancement of medical or allied scientific knowledge."

It is estimated that the capital of the trust fund will approximate $1,000,000.

There is provision embodied in the will for the termination of the trust within the twenty-five-year period. The conditions for shortening the term are entirely legal in their scope. In the event of an earlier termination, or at the expiration of the period of twenty-five years, direction is made to the executors to pay over

the principal of the fund "to such hospitals, sanatoria or similar institutions, whether incorporated or unincorporated, not operated for a profit," as the board of trustees of the foundation shall, by their majority vote, determine. Direction is also made for a division of the board of trustees into a class of five doctors of medicine and four lay members. By his own nomination he has selected certain distinguished physicians in the former class, including the eminent physician and writer, Dr. Alexis A. Carrell. The testator has designated his executors and his nephew as the original lay members of the board. With meticulous care, as indicated in part above, Mr. Dazian restricted the beneficiaries, whether individual or corporate, of his charitable bounty to those not engaged in private gain or profit. The trustees of the foundation originally nominated and their successors are required to serve "without compensation or monetary profit or gain to themselves." They are prohibited from changing "the fundamental and basic purposes" and are precluded from adopting any rule, by-law or regulation which will permit the funds "to be used or employed for profit or monetary gain or benefit of the Foundation," its trustees or any person or institution receiving the funds.

When an individual is selected for a fellowship, the annual allowance is to be applied only to cover the cost of education, "living expenses and incidental accessories," but without payment of "any compensation or profit to such individual" during the period of his course.

It would be difficult to conceive a humanitarian or beneficent purpose more clearly encompassed within the mandate of the Tilden Act, which declares that a bequest to an "educational, charitable or benevolent" use shall be sustained as valid. (Pers. Prop. Law, § 12.)

The charitable trust is clearly lawful. (*Matter of Frasch*, 245 N. Y. 174, affg. 125 Misc. 381; *Matter of Durbrow*, 245 N. Y. 469; *Matter of Judd*, 270 id. 516, affg. 242 App. Div. 389; *Matter of Hall*, 272 N. Y. 428, affg. 156 Misc. 841; *Matter of Potts*, 236 N. Y. 658, affg. 205 App. Div. 147; *Matter of Davidge*, 200 id. 437.) The testamentary provisions were drawn with precision. They reveal expert knowledge of the legal rules applying to charitable gifts. Each purpose stated is within the scope of a valid gift to charity. Every form of private profit, or possible application to a non-charitable purpose, was expressly excluded by the testator and the draftsman of the will.

Reliance is placed by those attacking the validity of the trust upon *Matter of Shattuck* (193 N. Y. 446). That case has not the slightest pertinency to the will here involved. In subsequent deci-

sions the Court of Appeals has limited the determination of the *Shattuck* case to the specific facts presented. (*Matter of Frasch, supra; Matter of Durbrow, supra; Matter of Robinson,* 203 N. Y. 380; *Butterworth* v. *Keeler,* 219 id. 446.)

It is to be hoped that the Court of Appeals may find early opportunity to declare by express and direct statement that the decision in *Matter of Shattuck* has been entirely nullified by the more modern and liberal policy of the court in its vigorous support of charitable gifts. My colleague, Surrogate DELEHANTY, has also suggested the desirability of such a pronouncement. (*Matter of Browning,* 165 Misc. 819.) A situation, such as here, will thereby be avoided where counsel, attacking the validity of such a gift, seize upon the *Shattuck* case as a precedent and either ignore willfully or misunderstand innocently its utter uselessness as a guide to judicial action.

Discussion might be made at greater length as to the provision for the gift in part to an unincorporated association as might be selected by the board of trustees at the termination of the trust, but that question is entirely academic at the present time. In all probability the trustees will select incorporated beneficiaries to avoid even the slightest legal doubt of the method of distribution of the funds. However, in the event of such oversight, a gift by the trustees to an unincorporated association or institution would be saved by the courts by the application of the doctrine of *cy pres.* (*Matter of Griffin,* 167 N. Y. 71; *Ely* v. *Megie,* 219 id. 112; *Matter of Walter,* 150 Misc. 512; *Prudential Ins. Co.* v. *N. Y. Guild for Jewish Blind,* 252 App. Div. 493.) I specifically hold that the inclusion of unincorporated institutions in the will does not invalidate the trust.

The proposed settlement with the next of kin based upon the non-existent invalidity of the trust will not be countenanced or approved by the court. The Attorney-General, under his statutory duty to defend and uphold charitable gifts, has likewise refused to consent to the proposed compromise. To permit the consummation of such a settlement would constitute a flagrant diversion of the funds of the trust and a direct violation of the testator's lawful and charitable purpose.

Submit decree on notice construing the will accordingly.