### In the Matter of the Probate of the Will of JOSEPHINE LACHAT, Deceased.

Surrogate's Court, New York County, October 14, 1944.

*George W. Martin, Elizabeth M. Graham* and *John B. Kreischer* for Memorial Hospital and another, in support of motion.

*Malcolm J. Hartsell* and *M. MacDonald Robison* for Juliette Lachat and others, in support of motion.

*Samuel Gottlieb* for Clyde M. Limbaugh, in support of motion.

*Joseph A. Cox,* for James F. Egan, Public Administrator of the County of New York, in opposition to motion.

*James L. Duncanson,* attorney designated by Alien Property Custodian for Leo Lachat and another, persons in enemy-occupied territory, in opposition to motion.

*Nathaniel L. Goldstein, Attorney-General of the State of New York (Corning G. McKennee* of counsel), in opposition to motion.

*Matthew B. Sentner* for New York Association for the Blind.

*Louis D. Della Morte* and *George N Whittlesey* for Children's Aid Society of the City of New York.

*Robert E. Connolley* and *John L. Kling* for St. Vincent de Paul Institute.

*John T. Magan* for Home for the Aged of the Little Sisters of the Poor.

*Cyrus B. Austin* for the Salvation Army.

*Joseph V. McKee* for Title Guarantee & Trust Co.

FOLEY, S. In this contested probate proceeding the validity of the will of the testatrix, dated December 28, 1942, was put in issue by formal objections filed by all of the legatees who

were the only beneficiaries named in a prior will, dated December 18, 1935. They consist of a group of six charitable institutions. Because of the possible existence of unknown next of kin, the Public Administrator of this county was brought in as a party by citation duly served upon him, pursuant to section 136-z of the Surrogate's Court Act. He appeared by his attorney and filed objections to probate. The Attorney-General of the State of New York was likewise brought in as a party and duly appeared. The Alien Property Custodian likewise appeared in the proceeding to represent persons who might possibly be next of kin and who were alleged to have been residents of an enemy occupied country. Certain next of kin also filed objections.

The issues raised by the objections involve invalid execution, lack of testamentary capacity, undue influence and fraud.

The case came on for trial in June of this year before the Surrogate, without a jury. Testimony was submitted by the contestants tending gravely to impeach the validity of the will on certain of these issues. An adjournment was then granted at the request of counsel to October 18, 1944, for the continuation and completion of the trial.* By arrangement of the attorneys, as approved by the Surrogate, the testimony of three witnesses was taken by a departure from the usual practice of receiving at the beginning of the trial the prima facie case of the proponent. The gross estate consists of approximately $80,000. Under the contested instrument a specific bequest of certain personal property was left to Juliette Lachat, who was described in it by the testatrix as " my cousin " and the residue of the estate was given to Limbaugh, the proponent. He was the manager of the hotel where the testatrix resided at the time of the execution of the alleged will. He is not related to her. Shortly after the execution of the instrument she was adjudicated an incompetent. At the time of such execution she was about ninety-three years old. She died approximately one year after the date of the alleged execution.

The application now presented to the Surrogate for disposition and brought on by order to show cause is for a decree denying probate to the propounded paper. It is based upon the consent of Limbaugh, the proponent and residuary legatee, and Juliette Lachat, the specific legatee, and upon the recommendation of the Memorial Hospital for the Treatment of Cancer and Allied Diseases (hereinafter referred to as the

* See *Matter of Lachat*, 184 Misc. 492, decided October 24, 1944.— [REP.

Hospital). It was the residuary legatee named in the prior will, dated December 18, 1935. It is further based upon the representation that a settlement has been arrived at between Limbaugh, the Hospital and Juliette Lachat. It is alleged that the Hospital plans by the proposed settlement to pay (a) to Limbaugh the sum of $8,500, plus certain disbursements and (b) $1,000 to Juliette Lachat. While not set forth in the moving papers, it was stated on the argument of the application that the Hospital proposes to pay to the attorney for certain of the contestants the sum of $5,000 as a fee for his services and a total of $4,000 to certain of his clients. The latter payment was naïvely characterized as compensation for their services in supplying evidence of use to the contestants generally and not as a settlement to them as next of kin. The total amount thus proposed to be paid by the Hospital is $18,500 out of an approximate share as residuary legatee under the prior will of $50,000 if the proponent's will was rejected and the prior will admitted.

The application to deny probate to the propounded instrument is denied. The Surrogate directs that the trial of the contested proceeding be continued before him on the date fixed and be completed.

The first ground of denial is that all the necessary persons interested have not joined in it and because the settlement is vigorously opposed by the Attorney-General, by the Alien Property Custodian and by the Public Administrator representing the interests of certain of such persons. Each of these officials has been brought into the case, under the requisite practice, in order to represent unknown next of kin or known possible next of kin whose legal status has not yet been determined.

The Attorney-General also acts under his statutory duty to enforce the public policy of the State of New York in the protection of charitable gifts.

Under the applicable regulations for the submission and approval by the Surrogate of a settlement agreement in a probate proceeding the rights of all persons known or unknown whose interests " are or may be affected by the compromise " must be protected. They specifically include next of kin who would take by intestacy. It must appear to the satisfaction of the Surrogate that such rights and interests have been safeguarded by the terms of the compromise agreement. These provisions are contained in section 19 of the Decedent Estate Law. In certain cases in the settlement of probate contests,

a formal agreement and procedure under section 19 may not be required and the settlement may be accomplished by stipulation of compromise between the persons whose interests are affected. But in all of these forms of settlements the rights of next of kin or other persons who would be affected by the admission or rejection of the will and by the terms of the settlement cannot be ignored, disregarded cr destroyed by an arrangement between less than all the persons interested in the estate, either under the propounded instrument or under prior will or by intestacy. The objection here by the official representatives to the proposed settlement is alone sufficient ground for the denial of the application to deny probate to the propounded instrument in advance of the completion of the trial.

*Matter of Billet* (187 App. Div. 309), in which it was held that an alleged will might be denied probate upon the consent of all next of kin and of all the legatees named in the instrument, has no application to the facts in the present proceeding. There the status of the only two next of kin was conceded. Here, as stated above, no determination has been made as to all of the next of kin of the testatrix.

The second ground for the denial of the pending application is that the settlement by the Hospital constitutes an improvident diversion of a potential gift to a charitable organization and threatens a violation of the Tilden Act (Personal Property Law, § 12) and of the public policy of this State. The Attorney-General bases his opposition upon this ground. There is additional support for his opposition because of the very damaging testimony submitted by the contestants which on the present state of the record amounts to a prima facie establishment that the will was procured by the undue influence of Limbaugh and that the testatrix was of unsound mind. Necessarily the opportunity is open to the proponent on the resumption of the trial to overcome these inferences in the submission of his own case. But if the propounded will is denied probate at the close of the trial and the prior will is admitted to probate, the Hospital will be entitled, as above stated, to approximately $50,000 as its residuary legacy. The proposed settlement will divert a substantial part of this charitable gift to unauthorized noncharitable purposes. The statutory duty to enforce the carrying out of charitable gifts is placed upon the Attorney-General by section 12 of the Personal Property Law. (*St. Joseph's Hospital* v. *Bennett,* 281 N Y. 115, 119; *Matter of Dazian,* 167 Misc. 151, affd. 255 App. Div. 951, leave to appeal denied 280 N. Y. 851.) This duty of the Attorney-General was

most recently defined by the Court of Appeals in *St. Joseph's Hospital* v. *Bennett* (*supra*). It was there stated by Judge FINCH: "The question here presented is whether the clearly expressed direction of the testator must be obeyed. The answer to that question does not depend upon whether the gift was absolute or created a trust, or whether the testator annexed a direction or a technical condition to the gift. The authorities sustain the validity of the direction of the testator, and equity will afford protection to a donor to a charitable corporation in that the Attorney-General may maintain a suit to compel the property to be held for the charitable purpose for which it was given to the corporation. (American Law Institute, Restatement of the Law of Trusts, vol. 2, ch. 11, p. 1093.) Nothing in authority, statute or public policy has been brought to our attention which prevents a testator from leaving his money to a charitable corporation and having his clearly expressed intention enforced."

In *Matter of Dazian* (*supra*, p. 154) in a proceeding for the construction of the will, an attempt was made, as here, to secure the approval of the Surrogate to an agreement of settlement between the representatives of the charitable legatee — the Dazian Foundation — and the next of kin. The application was denied by me and the validity of the charitable trust and the disapproval of the proposed settlement were sustained by the appellate courts. In my decision in that case, I said: "The proposed settlement with the next of kin based upon the non-existent invalidity of the trust will not be countenanced or approved by the court. The Attorney-General, under his statutory duty to defend and uphold charitable gifts, has likewise refused to consent to the proposed compromise. To permit the consummation of such a settlement would constitute a flagrant diversion of the funds of the trust and a direct violation of the testator's lawful and charitable purpose."

A charitable corporation cannot divert a fund from its declared purpose. "It took it for the purpose of its organization. To this end it was bound to devote it. To divert it to other purposes would have exceeded its powers. To do so would subject it to action by the state." (*Sherman* v. *Richmond Hose Co.,* 230 N. Y. 462, 469.) "It may not * * * receive a gift made for one purpose and use it for another, unless the court applying the *cy pres* doctrine so commands." (*St. Joseph's Hospital* v. *Bennett, supra,* p. 123.)

The quotations from these decisions apply with equal force to the proposed settlement sought to be used here as a basis

for a summary denial of probate in the midst of the trial of a will contest.

It has been the invariable practice of this court that the Attorney-General shall be cited in probate proceedings where a will containing a charitable bequest or trust is attacked, or where a charitable institution is named as a legatee or beneficiary under a prior will. Thereby collusive, improper or improvident settlements between the charitable beneficiary and other parties to the contest are prevented. The form of the proceeding or action does not change the duty of the Attorney-General in the enforcement of the Tilden Act. It must be as effectively discharged in a probate contest, as here, as in a construction or accounting proceeding or in an action in equity in the Supreme Court. Moreover, the provisions of the Tilden Act not only impose the duty of protection of the charitable gift upon the Attorney-General, but vest responsibility for the supervision of enforcement in the Supreme Court or the Surrogate's Court having jurisdiction.

The public policy of the State is not controlled by the action of the officers of a charitable corporation, whether motivated by expediency or otherwise. It is aimed at the protection of the ultimate beneficiaries of the gift — the sick, the aged, the infirm or other persons who are the real objects of the charitable donation.

The Surrogate's Courts uniformly approve settlements by charitable legatees where all the persons whose interests are affected consent or where infants or incompetents or unknown or unborn persons interested are represented by a special guardian, a committee of an incompetent or by other proper representative and where the circumstances underlying the settlement justify its approval. These requisite elements, however, are not present in the application here.

The trial will proceed on the day previously set — October 18, 1944, at 10:30 A.M.

Submit order on notice denying the application accordingly.