*In re* POWERS ESTATE.

APPEAL OF ROGOSKI.

1. APPEAL AND ERROR—SECURITY FOR COSTS—APPEAL FROM PROBATE COURT.

Denial of will proponent's petition to circuit court to require all contesting parties to furnish additional security for costs *held*, not an abuse of discretion, where heirs-at-law and guardian *ad litem* did file appeal bonds (CL 1948, § 701.39).

2. WILLS—JUDGMENT.

An instrument submitted as a final testament enjoys no legal, as distinguished from evidentiary, worth, unless and until it is authenticated by judgment (CL 1948, § 702.20).

3. SAME—UNPROBATED WILLS—DISINHERITANCE OF HEIRS.

Heirs-at-law were not barred as contestants by prior unprobated wills disinheriting them (CL 1948, § 702.20).

4. SAME—RIGHT TO CONTEST—HEIR-FINDING COMPANY—CHAMPERTOUS AGREEMENT.

Heirs-at-law who had signed a 40% contingency agreement with an heir-finding company *held*, not thereby to have lost their right to contest will which proponent submitted for probate, since, if the agreement be valid they still retained a 60% of their interest and if the agreement be champertous and void, they would have 100% of their interest (CL 1948, § 702.-24).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 3 Am Jur, Appeal and Error § 487.
[2] 57 Am Jur, Wills § 745.
[3] 57 Am Jur, Wills § 808.
Standing of heir or next of kin to contest will as affected by prior will by which he is disinherited. 112 ALR 1405.
[4] 57 Am Jur, Wills § 806.
[5, 7] 10 Am Jur, Charities § 115.6.

5. TRUSTS—CHARITABLE TRUSTS—UNASCERTAINED BENEFICIARIES—PROSECUTING ATTORNEY.

The prosecuting attorney of the county having jurisdiction and control of a charitable trust, not guardian *ad litem* appointed by the probate court, is a proper party to represent unascertained beneficiaries under the trust (CL 1948, §§ 554.-351, 554.352).

6. SAME—CHARITABLE TRUST—ENFORCEMENT—PUBLIC EXPENSE.

The enforcement of a charitable trust is a public duty imposed by statute and is to be borne at public expense (CL 1948, §§ 554.-351, 554.352).

7. SAME—CHARITABLE TRUST—GUARDIAN AD LITEM—PROSECUTING ATTORNEY.

A circuit court order appointing a guardian *ad litem* at the request of the prosecuting attorney to represent the unascertained beneficiaries under a will prior to the will, sought to be probated by proponent, together with order approving expenses and fees for the guardian *ad litem*, are set aside as in conflict with the controlling statute (CL 1948, §§ 554.351, 554.352).

BLACK, J., dissenting in part.

Appeal from Muskegon; Streeter (Halford I.), J., presiding. Submitted October 6, 1960. (Docket Nos. 35–38, Calendar Nos. 48,720–48,723.) Decided January 9, 1961. Rehearing denied February 28, 1961.

In the matter of the estate of Lunette I. Powers, deceased, Alexis J. Rogoski, proposed executor, petitioned for probate of will. Objections filed by John L. Wierengo, Jr., who had been appointed by the circuit court to act as guardian *ad litem* for indefinite and unascertained beneficiaries of charitable trusts which would be established by prior will, which will he presented for probate. Objections also filed by prosecuting attorney, acting for undesignated charities, and by Phyllis E. Soles Anderson and other heirs-at-law. Contest ordered certified to circuit court, which order and various findings therein both proponent and contestant guardian *ad litem* attack. Circuit court orders entered determining prosecuting

attorney, heirs-at-law, and guardian *ad litem* as proper parties, confirming the appointment of and approving fees and expenses for the latter, and affirming the certification of the will contest. Plaintiff-proponent appeals. Modified, affirmed, and remanded.

*Oscar E. Waer* and *John C. Cary,* for plaintiff-proponent.

*Varnum, Riddering, Wierengo & Christenson* (*F. William Hutchinson,* of counsel), for defendant-contestant guardian *ad litem.*

*John S. White,* for defendant-contestant heir-at-law Anderson and others.

*Harry J. Knudsen,* Prosecuting Attorney, on application for rehearing.

EDWARDS, J.   In this case a Michigan lawyer drafted a will (and 2 codicils thereto) which left the bulk of an old lady's estate of three-quarters of a million dollars to the lawyer's wife. The particular will in dispute was the last of a series of wills, and it and its codicils were executed within a period of 2 years before the testatrix was committed to a mental institution where she subsequently died.

The will preceding the last will provided for certain charities to be established. The prosecuting attorney of the county, a guardian *ad litem* appointed by the circuit court to represent the charitable trusts, and certain distant relatives all seek to contest the last will and set it aside on grounds of fraud and undue influence and the mental incompetence of the testatrix.

The will contest brought by the named contestants having been certified to the circuit court for hearing, the proponent of the will appeals asserting various irregularities in the will contest procedure and that

there is no proper party before the court who can bring the will contest.

We find the proceedings to this point regular in all respects, and further find that the named parties are proper parties in interest to contest the will except (as will be indicated later) for the guardian *ad litem* appointed by the circuit court.

The detailed dates and facts relevant to this appeal follow:

Lunette I. Powers died March 24, 1959. She had been a practicing physician in Muskegon for many years, having graduated from Northwestern Medical School in 1897.

During her lifetime she had made a number of wills. Of these we will have occasion to refer in particular to the last 2—one executed in 1952, the other in 1955.

By the terms of the 1952 will, after certain specific bequests, testatrix set up a residuary trust for one Kathryn A. Mann, whom this record shows to have predeceased testatrix. The will then provided further:

"Upon the death of my good friend, Kathryn A. Mann, said trust shall terminate and my trustee shall pay over the corpus to such one or more entities, free from trust, in such manner and in such proportions as my said trustees may appoint by deed; provided, that each such appointee shall (1) be organized and operated exclusively for religious, charitable, scientific, literary or educational purposes, (2) not permit any part of its net earnings to inure to the benefit of any private shareholder or individual, (3) not have as a substantial part of its activities carrying on propaganda or otherwise attempting to influence legislation, (4) qualify under the provisions of section 101(6), section 1004(a) (2) and section 812(d) of the internal revenue code (or such sections as may be substituted therefor) as they obtain at the time of my death, and (5) qualify for tax exemption

under all income, gift, and death taxes of the State of Michigan which may obtain at the time of my death; provided, that if no charitable agency is entitled to exemption under such Federal and Michigan laws, conditions (4) and (5) shall be disregarded."

Implementing this paragraph were a number of precatory expressions by which testatrix sought to indicate the sort of charitable work she desired to have carried out.

December 7, 1955, testatrix executed another will. This will, after reciting some relatively specific small bequests, in paragraph 7 bequeathed 1/5 of the estate to each of 3 persons: Alexis J. Rogoski, Bart D. Buck, and Loretta E. Rogoski. This will also contained a residuary clause leaving all the residue to Loretta E. Rogoski.

On December 22, 1955, a codicil to this will was executed which changed the amounts specified in paragraph 7 from 1/5 of the estate to 5%. The residuary clause in favor of Loretta E. Rogoski was not changed by that codicil, nor by another codicil dated November 14, 1956, which added specific bequests totaling no more than $4,600.

The pleadings concede that the 1955 will and the 2 codicils thereto were drafted by Alexis J. Rogoski, attorney for Dr. Powers. Loretta E. Rogoski is his wife.

On May 15, 1957, Dr. Powers was committed to Traverse City State hospital as a mentally ill person. The contestants allege that at the time she was suffering "from progressive senile psychosis" of long-standing duration. Dr. Powers died in that hospital March 24, 1959.

On March 26, 1959, Alexis J. Rogoski, who with Bart D. Buck had been named executors and trustees under the 1955 will, filed a petition for probate of the 1955 will. On April 1st, Bart D. Buck filed a declination of trust in the Powers estate.

On May 8, 1959, the prosecuting attorney of Muskegon county filed a petition in the circuit court for Muskegon county seeking appointment of a guardian *ad litem* to represent and protect the interests of the undetermined and unknown charitable beneficiaries under the 1952 will. On the same day, the 2 circuit judges for Muskegon county appointed John L. Wierengo, Jr., guardian *ad litem.*

Subsequently the guardian *ad litem,* the prosecuting attorney of Muskegon county, and certain heirs-at-law filed objections in probate court to the probate of the 1955 will, and petitions for certification of the will contest to the circuit court. The proponent filed motions to dismiss the objections and to deny certification. After hearing proofs and arguments, the probate judge certified the will contest to the circuit court and entered an order holding in part:

"It is ordered and adjudged that John L. Wierengo, Jr., guardian *ad litem* is not a proper party in interest to appear in these proceedings, the relief prayed for in his petitions is hereby denied, and he is hereby dismissed as a party in interest to these proceedings.

"It is ordered and adjudged that the heirs-at-law, the prosecuting attorney for the county of Muskegon, and the proponent Alexis J. Rogoski are proper parties in interest in these proceedings."

The guardian *ad litem* on instructions of the circuit court appealed the probate court order dismissing him as not being a proper party in interest. The proponent Rogoski likewise appealed the other provisions of the probate court order.

After hearing before a visiting circuit judge, these appeals were determined by an order reversing the probate court as to the guardian *ad litem* and holding him to be a proper party in interest and affirming all the balance of the probate court order. He also considered and granted a petition for fees and ex-

penses for the guardian *ad litem* and his attorneys in the sum of $2,718 to be paid from the estate.

At this same hearing the visiting circuit judge also heard and denied a petition from Rogoski to dismiss the probate court certification of the will contest and to require all contesting parties to furnish security for costs.

Proponent and appellant Rogoski, in 4 separate cases (all of which are consolidated for appellate purposes) contends that the circuit judge was in error on all of these determinations.

On the face of the matter it appears that issues of some significance are presented by this will contest. Appeal bonds have apparently been filed by the heirs-at-law and by the guardian *ad litem*. See CL 1948, § 701.39 (Stat Ann 1959 Cum Supp § 27.3178[39]). We find no reason to hold that the circuit judge abused his discretion in refusing appellant's petition for additional security for costs.

As to questions presented pertaining to which, if any, contestants were proper parties in interest to contest the will, we turn first to the heirs-at-law in relation to whom some factual material must be added.

The heirs-at-law are distant relatives of Dr. Powers. It is conceded on this record that if Dr. Powers had died intestate, they were of such relationship as to qualify as heirs-at-law. It also appears conceded that none of them had had any contact with Dr. Powers for many years, and that in all except 1 of 7 successive wills Dr. Powers had employed language which showed an intention to disinherit them.

Thus appellant contends in effect that even if the 1955 will were successfully contested, the heirs-at-law would be barred from any interest by one of the prior wills. Proper execution of these prior wills is conceded but, of course, none of them has been probated and approved.

The question thus posed has apparently never been answered directly in Michigan; but it has been answered with differing results in other States. Thus, Kansas,[1] Kentucky,[2] and Georgia[3] have held that the right of heirs-at-law to contest a will was not cut off by the possible effect of prior unprobated wills, while Tennessee[4] and Louisiana[5] held the opposite.

We believe the Kansas, Kentucky, and Georgia view to be the preferable one for us to adopt. Under Michigan law, no prior wills can serve to pass title to property (or to disinherit) until and "unless it shall have been duly proved and allowed." CL 1948, § 702.20 (Stat Ann 1943 Rev § 27.3178[90]).

In *In re Dutton Estate,* 347 Mich 186, this Court said (p 191):

"An instrument submitted as a final testament enjoys no legal, distinguished from evidentiary, worth unless and until it is authenticated by judgment."

We believe the courts below were right in holding that the heirs-at-law were not barred as contestants by prior unprobated wills.

The other issue concerning the right of the heirs-at-law to contest this will merits less attention. Appellant claims that the heirs-at-law have signed a 40% contingency agreement with an "heir finding" company. Appellant asserts that this agreement is champertous and void, and hence appellant asks us to hold that the heirs-at-law are barred as contestants.

If, without deciding, we assume the agreement cited is valid, the heirs-at-law who have signed it still retain 60% of any interest they might have. If we as-

---

[1] *Marr* v. *Barnes,* 126 Kan 84 (267 P 9).
[2] *Murphy's Ex'r.* v. *Murphy,* 23 Ky L Rep 1460 (65 SW 165).
[3] *Stephens* v. *Brady,* 209 Ga 428 (73 SE2d 182).
[4] *Cowan* v. *Walker,* 117 Tenn 135 (96 SW 967).
[5] *Feitel's Succession,* 187 La 596 (175 So 72).

sume that it is champertous and void, they have 100%
of their interest. The cases cited by appellant con-
cern assignees and have no bearing on our immedi-
ate problems.

The heirs-at-law are interested parties (CL 1948,
§ 702.24 [Stat Ann 1943 Rev § 27.3178(94)]) for pur-
poses of the will contest.

The issues raised as to whether or not the prose-
cuting attorney of Muskegon county and the guard-
ian *ad litem* are also proper parties to this will con-
test are not so simply disposed of. We shall deal with
both issues at the same time since they are intimately
related. They require construction of 2 sections of
the Michigan statute dealing with charitable be-
quests:

"Sec. 1. No gift, grant, bequest or devise,
whether in trust or otherwise to religious, educa-
tional, charitable or benevolent uses, or for the pur-
pose of providing for the care or maintenance of any
part of any cemetery, public or private, or anything
therein contained which shall in other respects be
valid under the laws of this State, shall be invalid by
reason of the indefiniteness or uncertainty of the ob-
ject of such trust or of the persons designated as the
beneficiaries thereunder in the instrument creating
the same, nor by reason of the same contravening any
statute or rule against perpetuities. If in the in-
strument creating such a gift, grant, bequest or de-
vise, there is a trustee named to execute the same, the
legal title to the lands or property given, granted, de-
vised or bequeathed for such purposes, shall vest
in such trustee. *If no such trustee shall be named
in said instrument or if a vacancy occurs in the
trusteeship, then the trust shall vest in the court of
chancery for the proper county, and shall be executed
by some trustee appointed for that purpose by or
under the direction of the court; and said court may
make such orders or decrees as may be necessary to
vest the title to said lands or property in the trustee*

*so appointed."* (Emphasis supplied.)    CL 1948, § 554.351 (Stat Ann 1953 Rev § 26.1191).

"Sec. 2.   The court of chancery for the proper county shall have jurisdiction and control over the gifts, grants, bequests and devises in all cases provided for by section 1 of this act.   Every such trust shall be liberally construed by such court so that the intentions of the creator thereof shall be carried out whenever possible. *The prosecuting attorney of the county in which the court of chancery shall have jurisdiction and control shall represent the beneficiaries in all cases where they are uncertain or indefinite, and it shall be his duty to enforce such trusts by proper proceedings in the court,* but he shall not be required to perform any duties in connection with such trusts in any court outside of this State." (Emphasis supplied.)    CL 1948, § 554.352 (Stat Ann 1953 Rev § 26.1192).

The prosecuting attorney of Muskegon county apparently had facts presented to him which convinced him of the invalidity of Dr. Powers' 1955 will and the validity of the 1952 charitable bequests.   In such circumstances, we believe that the language of these 2 sections must be read as authorizing and requiring him to seek to enforce the charitable trust.

Scott on Trusts gives this brief history of the enforcement of charitable trusts:

"In England the records show that even before the enactment of the statute of charitable uses in 1601 suits were brought by the attorney-general to enforce charitable trusts.   The community has an interest in the enforcement of such trusts and the attorney general represents the community in seeing that the trusts are properly performed.   In some States such a suit may be maintained by the local district attorney or county attorney.   In most States, as in England, the suit is brought in the name of the attorney general, although in some States it is brought in the name of the people of the State but is prosecuted by

the attorney general." 4 Scott on Trusts (2d ed), p 2753.

While the duty of enforcing uncertain or indefinite charitable trusts in many States and in England is assigned to the attorney general, the Michigan statute like that of a number of States assigns this task to the prosecuting attorney of the county in which the circuit court has jurisdiction of the trust concerned.

Under a somewhat similar statute which, however, assigns the enforcement to the attorney general, New York has held that the attorney general is the proper representative of indefinite charitable beneficiaries. *National City Bank of New York* v. *Beebe,* 131 NYS2d 67, affirmed 285 App Div 874 (139 NYS2d 238), appeal denied 285 App Div 935 (139 NYS2d 887), motion granted and appeal dismissed 308 NY 960 (127 NE2d 100); *In re Lachat's Estate,* 184 Misc 486 (52 NYS2d 445), 184 Misc 492 (52 NYS2d 451), appeal dismissed 269 App Div 1013 (60 NYS2d 286).

See, also, *Burbank* v. *Burbank,* 152 Mass 254 (25 NE 427, 9 LRA 748); *Dickey* v. *Volker,* 321 Mo 235 (11 SW2d 278, 62 ALR 858); *Greenway* v. *Irvine's Trustee,* 279 Ky 632 (131 SW2d 705, 124 ALR 1229); 2 Restatement, Trusts2d, § 391.

In the Michigan case closest to our current problem, this Court held that a guardian *ad litem appointed* by *the probate court* was not a proper party to enforce the rights of uncertain and indefinite charitable beneficiaries in the circuit court and that the prosecuting attorney was.

"However, both parties to this appeal agree that there is a statutory provision in this State in consequence of which the prosecuting attorney of the county wherein the suit originated is a proper party plaintiff to represent unascertained beneficiaries.

" 'The prosecuting attorney of the county in which the court of chancery shall have jurisdiction and con-

trol shall represent the beneficiaries in all cases where they are uncertain or indefinite, and it shall be his duty to enforce such trusts by proper proceedings in the court, but he shall not be required to perform any duties in connection with such trusts in any court outside of this State.' CL 1929, § 13513.[6]

"The prosecuting attorney of Wayne county filed a petition in the circuit court in chancery asking leave to intervene as a party plaintiff in this suit. Prior to denial of appellant's motion to dismiss the circuit judge allowed such intervention. There has been no appeal from such holding; and further we think it was entirely proper. As a result there is now a proper party plaintiff in this case. It would be an idle ceremony, resulting in delay and unnecessary expense, for this Court to grant appellant's motion to dismiss the bill of complaint after the intervention of a proper party plaintiff who in event of dismissal, could forthwith renew the suit by filing a like bill of complaint. See CL 1929, §§ 14018, 14021;[7] and *Windoes* v. *Colwell,* 247 Mich 372." *King* v. *Emmons,* 283 Mich 116, 126 (115 ALR 564).

We regard this case as decisive of the issue as to whether the prosecuting attorney is a proper party and as tending in the direction of our view that he is the sole public authority charged with this responsibility.

We find no authority which holds otherwise than that the prosecuting attorney is a proper party. Appellant's reliance upon *LaFond* v. *City of Detroit,* 357 Mich 362, is misplaced. In regard to our current problem, that case held only that there was no necessity for the intervention of the prosecuting attorney of another county than Ingham which had jurisdiction over the trust involved.

---

6 CL 1948, § 554.352 (Stat Ann 1953 Rev § 26.1192).—REPORTER.
7 CL 1948, §§ 612.10, 612.13 (Stat Ann §§ 27.662, 27.665).—REPORTER.

The last question concerns the circuit court's appointment of a guardian *ad litem* and his appearance in the will contest in the role statutorily assigned to the prosecuting attorney. This appointment was made on the petition of the prosecuting attorney who represented that his office finances and personnel were not adequate to engage in the contest he believed would be forthcoming.

This reasoning does not appeal to us. The fact that this estate involves a considerable sum of money is no excuse for prolonged and proliferated litigation over what are essentially simple issues of fact. Further, the statute makes the enforcement of this sort of trust a public duty to be borne at public expense.

The circuit bench in Muskegon county is charged with the duty of assuming "jurisdiction and control" over charitable trusts imposed on it by PA 1915, No 280, §§ 1 and 2, which we have quoted above. See *In re Jones' Estate*, 334 Mich 392. This Court notes with approval the determination of the Muskegon bench to take these responsibilities seriously.

The statute, however, makes the prosecuting attorney the enforcement arm of the court in this regard. It also allows the court to appoint trustees where there are vacancies. We do not now seek to define the outer limits of the broad powers given the circuit court under this statute. We simply hold that it may not, even on the prosecuting attorney's request, relieve him of his statutory obligations.

The appointment of the guardian *ad litem* for the purposes outlined in the circuit court order we regard as in conflict with the express provisions of the controlling statute. The order approving expenses and fees for the guardian *ad litem* must also be set aside.

Modified, affirmed, and remanded for further proceedings consistent with this opinion.

Dethmers, C. J., and Carr, Kelly, Smith, Kavanagh, and Souris, JJ., concurred with Edwards, J.

Black, J. (*dissenting in part*). I knew of no better way to legalize the Jarndyced mulct of a testator's fat estate than to lay down an unqualified rule that his collaterally distant heirs, all of whom have been previously and steadily disinherited by a series of produced, proven, and fully residuary testaments, are eligible as contestants of what purports to be his latest will. Such rule, adopted today, aligns Michigan with that strange notion—originating in Kansas—that an unprobated earlier will, however valid and probatable that will may have been had death ensued prior to its legal revocation, is a "mere scrap of paper" having no force as evidence of a want of "interest" on the part of would-be contestants of a proffered-for-probate later will. It means, too, for this spinster's estate, years of costly contention in 3 separate courts until some sure and final judgment of testacy is entered. The only alternative is a tributary settlement no estate should be compelled to make.

These contestants and 7-times disinherited relatives of the testatrix, having been sought out and marshalled in court by an "heir-hunting" corporation,[1] are—in my view at least—possessed of no "interest" in her estate. They *are* possessed, today's majority opinion considered, of a salable product which in most Michigan law offices is known by the expression "predatory nuisance." The price of that product appraises high with release of these opinions; a price this estate must pay (necessarily in

[1] The corporate name is The W. C. Cox Company. Its home office is in Tucson; its branch office in Chicago. For lawyers desiring its services I give the address: 135 South Fourth Avenue, Tucson, Arizona.

accordance with the so-called Dodge act of 1921[2])
on penalty of meeting the vexatious cost of defend-
ing 1 or more additional will contests should the
prosecuting attorney's present contest prove suc-
cessful.

The habit of conformity may suggest concurrence
with such business. Nevertheless, and assuredly in
this case of Powers, I insist on resistance of what
can easily become a bad habit in appellate court
quarters.

Today's majority looks at 5 cases decided respec-
tively in Kansas, Kentucky, Georgia, Tennessee, and
Louisiana (*Marr v. Barnes,* 126 Kan 84 [267 P 9];
*Murphy's Ex'r.* v. *Murphy,* 23 Ky L Rep 1460 [65
SW 165]; *Stephens* v. *Brady,* 209 Ga 428 [73 SE2d
182]; *Cowan* v. *Walker,* 117 Tenn 135 [96 SW 967],
and *Feitel's Succession,* 187 La 596 [175 So 72]).
Thereupon, having declared the first 3 as "prefer-
able," the Court announces that the mentioned heirs
are "not barred as contestants by prior unprobated
wills."[3] With this I cannot agree, and turn first to
our venerable statute (CL 1948, § 702.29 [Stat Ann
1943 Rev § 27.3178(99)]) and the construction this
Court has steadily placed thereon.

*Butts* v. *Ruthven,* 292 Mich 602, 608, declares:

---

[2] Re-enacted and now incorporated in the probate code of 1939
as CL 1948, §§ 702.45–702.48 (Stat Ann 1943 Rev §§ 27.3178[115]–
27.3178[118]). The hapless probate or circuit judge, called upon
to certify that the presently considered caveat or some future caveat
of these heirs "appears" to be in good faith, doubtless will stiffen
his stomach muscles for the ordeal of judicial signature.

[3] To set right the numerical score of these State court cases I
would add *In re Peterson's Estate,* 202 Or 4 (271 P2d 658),
holding that previously disinherited contestants "have no standing
in court to contest the will in question as under the state of the
record they would have no financial interest in the estate", and
*In re Livingston's Estate,* 179 Iowa 183 (153 NW 200). In
*Livingston* the court adopted the reasoning of *Wilcoxon* v. *Wilcoxon,*
165 Ill 454 (46 NE 369), and held that the contestants of a second
codicil were ineligible to contest because the testator's will and first
codicil, shown and proven as valid, left them nothing.

"The question of 'all concerned' and 'any person aggrieved' have been ruled upon by our Court.

"In *In re Estate of Matt Miller,* 274 Mich 190, 194, we said:

" 'The question of who may be aggrieved was settled in *Labar* v. *Nichols,* 23 Mich 310. To be aggrieved, one must have some interest of a pecuniary nature in the outcome of the case, and not a mere possibility arising from some unknown and future contingency. This is the general rule. * * * It is well settled that the parties in interest in a proceeding to probate a will are the beneficiaries under the will and those upon whom the law would cast the property in the event the will was set aside.'

"In *In re Zinke's Estate,* 235 Mich 201, 205, the Court said:

" 'If the contestant would be entitled to no share in the estate if the will was disallowed, and could take nothing from the estate under the statutes of descent and distribution, he is not an interested party.' "[4]

In the *Zinke Case* it was shown that the testator, previous to execution of his submitted-for-probate will, made an estate-releasing advancement to his son, Paul Zinke. Paul predeceased the testator, leaving a minor son, Julius Zinke. The will made due reference to Paul's advancement and left nothing

---

[4] If the 1955–1956 instruments now in contest are denied probate, the residuary estate of Dr. Powers will be cast upon the tax-exempting beneficiaries designated for selection by her will of 1952; not these collateral relatives. And if the will of 1952 should be denied probate, the estate would be cast upon the beneficiaries designated in the second will of 1951, rather than such relatives, and so on down the weary course of disgraceful litigation.

"The little plaintiff or defendant, who was promised a new rocking horse when Jarndyce and Jarndyce should be settled, has grown up, possessed himself of a real horse, and trotted away into the other world. Fair wards of court have faded into mothers and grandmothers; a long procession of chancellors has come in and gone out; the legion of bills in the suit have been transformed into merely bills of mortality; * * * but Jarndyce and Jarndyce still drags its dreary length before the court, perennially hopeless." (Dickens' Bleak House, ch 1.)

Our hoary eyrie, atop this venerable capitol, must not become known as Michigan's "Bleak House."

to Julius. Julius (claiming as heir under Paul) sought to contest the will. The question of Julius' right to contest was raised and decided against him on ground that the advancement eliminated Paul's "interest," hence the "interest" of Julius, and that Julius would succeed to nothing even if successful with such contest.

The *Zinke Case* establishes that any act of a testator which validly effects a total disinheritance of his legal heirs renders them ineligible as contestants of his subsequently executed will or wills. In such case the heirs become legal strangers to the estate the same as if, for proper consideration, they had released all interest in the estate or had assigned such interest to others (as in *In re Vanden Bosch's Estate,* 207 Mich 89; cited and followed in *Butts,* cited above).

The reasoning of the cases my Brothers have decided to follow is summarized best in *Marr* v. *Barnes, supra* (p 87):

"How an *unprobated* will could be said to be a *valid* will and used in litigation as a *valid* will to the prejudice of an heir who has never had a chance to question its validity calls for a subtlety of reasoning which we would not care to follow."

I answer that these heirs were given full opportunity below to make some showing, *prima facie* at least, that each of the previous disinheriting testaments would not have been entitled to probate had the testatrix died shortly after its execution. To such opportunity the heirs rose with a *concession* that all such testaments were validly executed and attested.[5] But even if they had conceded nothing, the proponent's showing cast upon them the burden of overthrowing or at least neutralizing the rather

[5] These previous heir-disinheriting testaments were executed and attested respectively in 1935, 1940, 1947, March 11, 1951, June 5, 1951 and February 2, 1952.

sure conclusion that contest upon contest would, sooner or later, result in a final judgment that Dr. Powers died testate.[6]  When in support of his challenge the proponent produces and proves—not for probate but as evidence of "no interest" of the heirs —several preceding testaments disinheriting the testator's heirs, it is up to such heirs to show that their quest is not that of "a mere possibility arising from some unknown and future contingency." (*Labar* v. *Nichols,* quoted above in *Butts* v. *Ruthven.*)  They did not do so here, and stood upon the naked rule of *Marr, Murphy,* and *Stephens.*

As against the "scrap of paper" doctrine of *Marr,* I "prefer" the thoughtfully reasoned opinions of *Cowan* v. *Walker* and *Feitel's Succession, supra.*

In *Feitel* especially, duplicating this case of Powers, the court was called upon to consider the utter absurdity of ruling that a *series* of valid previous wills (not just one as in *Marr, Murphy,* and *Stephens*), shown in evidence for the purpose of proving disqualification of the contestant, failed to effect such disqualification because no one of such wills had been submitted for probate.  The court said (pp 622, 623):

"If we maintain, in a case like this, that the court cannot consider a previous will merely because it has not been probated, in determining whether the plaintiff has a right of action, and if the plaintiff should succeed in annulling the last will, the plaintiff would have to bring another suit to annul the next preceding will, when probated; and, if the plaintiff should succeed also in annulling that will, he or she would have to bring another suit to annul

---

[6] The question of eligibility of these heirs to contest was properly raised by motion in advance of trial (*In re Elliott's Estate,* 285 Mich 579, 582 and cases therein cited).  Such practice is not exclusive, of course.  The question may be raised during trial of a will contest whenever, by proof, concession, or opening statements of counsel, it appears that the contestants have no "interest" and so are not "concerned."

the next preceding will, when probated, and so on down the line; and, if the plaintiff should eventually come to a valid will, all of his or her victories—and all of the time and trouble given to the litigation—would be in vain. We must bear in mind that, in a case where the testator has made several wills, in each of which he has revoked the preceding will or wills, the only one that can be probated is the last will. In this case, for instance, Irvin S. Feitel, although he is the residuary legatee and testamentary executor named in all of the wills, cannot ask to have one of the previous wills of the testator probated unless and until the last will is annulled."

Where, as here, a former and fully residuary testament is revoked by a subsequent like instrument or instruments, such testament is not entitled to probate because it is not the testator's final will. Nevertheless, when such former testament is proved for any relevant purpose and the attesting proof is not questioned, it becomes valuable evidence of intention as well as legal testacy. A familiar example is the case where undue influence or fraud is charged in bringing about execution and attestation of an instrument in contest. *Beaubien* v. *Cicotte,* 12 Mich 459, 485;[7] *In re Loree's Estate,* 158 Mich 372, 377; *In re Jennings' Estate,* 335 Mich 241, 246 (per DETHMERS, J.); 57 Am Jur, Wills, § 442, p 313, and annotation in 82 ALR 963, headed: "Admissibility and weight on issue of mental capacity or undue influence in respect of will or conveyance, of instruments previously executed by the person in question." And see *Kashouty* v. *Deep,* 75 App DC 259 (126 F2d

---

[7] "The former wills, and other pecuniary arrangements for Mrs. Beaubien, connected with them, were properly received in evidence. It is true, of course, that making one will does not, of itself, render it at all unlikely that another will may be substituted; but previous preferences and plans may have a plain bearing upon an issue, where the question arises whether the testator has understandingly, and of his own free will, changed his settled views. No case has been cited holding such proof inadmissible. It is of very frequent occurrence in the cases reported: (citing cases)."

233, 234), where the plaintiff heirs, assigning undue influence, sued to set aside a conveyance by the decedent to his nephew. The realty conveyed was the decedent's entire estate. It was shown that a will of the decedent had been filed with the "Register of Wills" but had not as yet been probated. The will directed the executor to sell all real estate and to distribute the proceeds, together with the decedent's personal property. On this showing the question of eligibility of the plaintiff heirs to maintain the suit was raised and decided this way:

"We cannot presume that the will is invalid. Until it is proved to be so, in proceedings brought for that purpose in accordance with the statute, the heirs and next of kin have no standing to maintain this suit."

I hold for stated reasons that the assembled heirs of Dr. Powers are ineligible as present contestants. In all other respects I concur with the reasoning of and conclusions reached in the majority opinion.